AUDREY K. COSTA and SUZANNE CAROL PALMER, individually and on behalf of all others similarly situated, SHARON BOYLE, JENNIFER MUNDON, and AILEEN MORITA, Plaintiffs-Appellees, Cross-Appellants, *v.* FRANKLIN Y. SUNN, individually and in his capacity as Director of the Department of Social Services and Housing, Defendant-Appellant, Cross-Appellee

(CIVIL NO. 68124)

NO. 9597

ASHLYNN WALKER, Appellant, *v.* FRANKLIN Y. SUNN, Director of the Department of Social Services and Housing, State of Hawaii, Appellee

(CIVIL NO. 79597)

NO. 9889

FEBRUARY 21, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

The first of these matters, No. 9597, began as a class action filed in First Circuit Court on November 6, 1981, by Audrey K. Costa and Suzanne Carol Palmer (collectively Costa), recipients of public assistance under programs administered by the Department of Social Services and Housing (DSSH) against Franklin Y. Sunn, individually and as Director of DSSH. The action sought to have the circuit court declare invalid certain rules of eligibility for public assistance programs promulgated by DSSH, effective January 28, 1982 (January 1982 Rules). The rules were necessary to bring the programs into compliance with new standards for eligibility established by the Omnibus Budget Reconciliation Act of 1981, Public Law No. 97-35, 95 Stat. 357. The second matter, No. 9889, began as an appeal to the First Circuit Court by Ashlynn Walker (Walker)[1] from DSSH's termination of her welfare benefits.

DSSH appeals from the amended judgment of the court below entered on November 10, 1983, and Costa cross-appeals. Walker

---

[1] Where appropriate Costa, Palmer and Walker will be referred to as Plaintiffs.

appeals from the April 13, 1984 judgment affirming DSSH's action. The appeals were consolidated on July 5, 1984. We affirm. We will first discuss DSSH's appeal, followed by Costa's cross-appeal and Walker's appeal, respectively, after presenting the facts in each case.

## COSTA'S FACTS

In a previous appeal herein, the supreme court held on March 16, 1982, that insufficient public notice rendered the January 1982 Rules invalid, *Costa v. Sunn*, 64 Haw. 389, 642 P.2d 530 (1982), and remanded the case for entry of a judgment consistent with that opinion.

On April 2, 1982, after the remand, Costa moved for entry of judgment and renewed a motion for determination of the class.[2] On July 20, 1982, the circuit court (Honorable James H. Wakatsuki) entered judgment[3] (July 20, 1982 Judgment) (1) declaring the January 1982 Rules invalid; (2) enjoining DSSH from implementing those rules until such time as it complied with the public notice requirements of Hawaii Revised Statutes (HRS) § 91-3(a) (Supp. 1984); (3) reinstating the previous rules that were in effect on January 27, 1982 (Old Rules); (4) reinstating all recipients or applicants who may have had their benefits reduced, terminated or denied by DSSH pursuant to the January 1982 Rules, to the same benefits due them under the Old Rules; (5) directing DSSH to publish a notice informing all such recipients or applicants that they may have had their benefits improperly reduced or denied and may be eligible for reinstatement; and (6) requiring DSSH to submit to the court and Costa's counsel an accounting of "which members of the class were reinstated and which members of the class were provided with retroactive benefits."

New rules were validly adopted by DSSH effective the same day as the court's judgment, July 20, 1982 (July 20, 1982 Rules).

---

[2] A previous motion had been ruled unnecessary when the court granted DSSH's motion for summary judgment on January 6, 1982.

[3] On the same date in a separate order, Sharon Boyle, Jennifer Mundon, and Aileen Morita were added as plaintiffs.

On September 30, 1982, the circuit court (Honorable Edwin H. Honda)[4] granted the motion for certification of the class and defined the class as "all residents of the State of Hawaii and members of their public assistance households who were, or will be, adversely affected by [the January 1982 Rules]."

Thereafter DSSH published the notice as ordered and paid the reinstated class members retroactive benefits through July 20, 1982, the effective date of the new rules.

On February 3, 1983, after DSSH had filed its report to the court as ordered in the July 20, 1982 Judgment, Costa moved for further relief. The motion contended that DSSH improperly terminated retroactive benefits on July 20, 1982, because the recipients were not given adequate and timely notice of DSSH's intent to terminate the retroactive benefits on that date. The motion was denied on June 8, 1983, and Costa appealed. On July 8, 1983, DSSH filed a "cross-appeal" from the July 20, 1982 Judgment and from an order taxing costs entered on May 25, 1983. Both appeals were dismissed by the supreme court on September 2, 1983, for the reason that the July 20, 1982 Judgment was not a final one since it did not describe the class as required by Rule 23(c)(3), Hawaii Rules of Civil Procedure (HRCP) (1981).

On September 7, 1983, in circuit court, Costa moved for "Entry of Final Judgment," and on November 10, 1983, the court entered an Amended Judgment (Amended Judgment) setting forth the class certification. In supplying the omission of the July 20, 1982 Judgment, the Amended Judgment cited the September 30, 1982 order certifying the class. Otherwise, the two judgments are identical.

DSSH appealed from the Amended Judgment on November 28, 1983. On November 29, 1983, Costa cross-appealed from the June 28, 1983 "Order Denying Motion for Further Relief Pursuant to the July 20, 1982 Judgment."[5]

---

[4] Judge Wakatsuki was elevated to the supreme court on September 7, 1983.

[5] We construe Costa's cross-appeal to be from the Amended Judgment and Costa to be raising the denial of the motion for further relief as error by the trial court. *Kahalewai v. Rodrigues*, 4 Haw. App. 446, 667 P.2d 839 (1983).

## WALKER'S FACTS

Walker is one of the recipients who had been restored to benefits by the July 20, 1982 Judgment. She was given retroactive benefits by DSSH through July 20, 1982, when they were terminated. On December 3, 1982, she reapplied for the benefits that had been cut off and the application was denied. She requested and was given a hearing, after which her claim was again denied. Walker appealed to the circuit court where the decision of the hearing officer was affirmed in an order entered on April 13, 1984.[6] She lodged this appeal on May 14, 1984.

## DSSH'S APPEAL

The general question raised by DSSH's appeal is whether in an HRS § 91-7 (1976) action the circuit court is authorized to grant, in addition to the declaratory judgment, affirmative relief by way of a coercive judgment. We have broken this down into two specific questions: (1) Is the circuit court, under the circumstances in this case, authorized to reinstate the Old Rules; and (2) Is the circuit court authorized to reinstate all recipients or applicants who may have had their benefits reduced, terminated or denied by DSSH pursuant to the January 1982 Rules to the same benefits due them under the Old Rules? We answer yes to both questions.[7]

### I.

DSSH argues that the affirmative action of the trial court in reinstating the Old Rules and restoring Plaintiffs to their former benefits is not authorized by the remand, HRS § 91-7, or by case law. We disagree.[8]

---

[6] Judge Honda presided over the proceedings in circuit court.

[7] Although in its briefs DSSH cites as error the lower court's certification of the class after entry of the July 20, 1982 Judgment, DSSH concedes that it did not raise the question in the trial court. Our review of the record confirms this and we will not consider the point on appeal. *State v. Rodrigues,* 67 Haw. ___, 692 P.2d 1156 (1985).

[8] DSSH's argument that the action of the circuit court is not authorized by the remand is without merit. The action is not inconsistent with the order.

HRS § 91-7 reads as follows:

Declaratory judgment on validity of rules. (a) Any interested person may obtain a judicial declaration as to the validity of an agency rule as provided in subsection (b) herein by bringing an action against the agency in the circuit court of the county in which petitioner resides or has its principal place of business. The action may be maintained whether or not petitioner has first requested the agency to pass upon the validity of the rule in question.

(b) The court shall declare the rule invalid if it finds that it violates constitutional or statutory provisions, or exceeds the statutory authority of the agency, or was adopted without compliance with statutory rule-making procedures.

As a general rule, courts are authorized in declaratory judgment actions to grant affirmative or coercive relief. "In an action for declaratory judgment, the court is empowered to grant ancillary equitable relief. HRS § 632-3[.]" *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 613, 575 P.2d 869, 875 (1978). In *Life of the Land v. Land Use Commission,* 58 Haw. 292, 568 P.2d 1189 (1977), an action for declaratory judgment, the supreme court stated that the circuit court had jurisdiction over agency appeals under HRS § 91-14, and "jurisdiction to render declaratory judgments under HRS §§ 91-7 and 632-1[.]"[9] *Id.* at 295, 568 P.2d at 1192.

We deem *Life of the Land, supra,* to be authority to hold that HRS §§ 91-7 and 632-1 are in *pari materia,* and § 91-7 serves the same purpose regarding the validity of agency regulations as does § 632-1 regarding other disputed matters between parties. Both statutes afford judicial review to terminate a controversy and avoid future litigation. *See Arizona State Board of Directors for Junior Colleges v. Phoenix Union High School District of Maricopa County,* 102 Ariz. 69, 424 P.2d 819 (1967). In determining the authority of the circuit court to afford ancillary relief under § 91-7, we may look to the

---

[9] *Punohu v. Sunn I,* 66 Haw. 485, 666 P.2d 1133 (1983), holds that a declaratory judgment action under HRS § 632-1 may not be used to review an administrative agency's action in a contested case, such procedure being governed by § 91-14. Query whether a declaratory action regarding the validity of an agency's regulations may be brought under either HRS §§ 91-7 or 632-1.

authority of the court under chapter 632. *See Cariaga v. Del Monte Corp.*, 65 Haw. 404, 652 P.2d 1143 (1982). The language of HRS § 632-3 (1976),[10] cited by the supreme court in *Food Pantry, supra,* clearly authorizes ancillary relief.

Although § 91-7 does not specifically authorize ancillary relief, we find nothing in its language or its legislative history indicating the legislature's intent to limit the court's authority in declaratory actions under HRS § 91-7 as opposed to those under chapter 632. Indeed, the intent of the legislature in enacting HRS § 91-7 was to expand the authority of the court, since the statute authorizes a declaratory judgment action regarding agency rules "regardless of whether there is an actual case or controversy." Hse. Stand. Comm. Rep. No. 8, in 1961 House Journal, at 658. The granting of ancillary relief is consistent with that intent.

Consequently, we hold that the court's authority to grant ancillary relief under § 91-7 is coextensive with its authority under chapter 632. To put it another way, § 91-7 merely removes the usual impediment to declaratory actions that there be an "actual controversy." HRS § 632-1. Consequently, the filing of an action under § 91-7 brings into play all the power and authority of the court extant under chapter 632. Such an interpretation is consistent with the purpose of the legislation. *See Cariaga v. Del Monte Corp., supra.*

Additionally, under HRS § 603-21.9(6) (1976), the several circuit courts are empowered

> [t]o make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

That statute is further authorization for the court's action in the instant case.

---

[10] HRS § 632-3 provides:
  Further relief upon judgment. Further relief based on a declaratory judgment may be granted whenever necessary or proper, after reasonable notice and hearing, against any adverse party whose rights have been adjudicated by the judgment.

Under the circumstances here, the circuit court was authorized and justified in granting affirmative relief. Not to have done so would have left DSSH and the recipients in a quandary as to what rules would govern eligibility for benefits. Reinstitution of the Old Rules removed any doubts.[11] Without the affirmative relief, invalidation of the January 1982 Rules would have been a Pyrrhic victory for Plaintiffs and would have caused rather than avoided future litigation.

## II.

DSSH also argues that reinstating the Old Rules and the recipients and benefits thereunder puts DSSH in conflict with the law and regulations relating to welfare benefits under the federal act of 1981, which conflict could result in the loss of federal matching funds.

DSSH is correct and the circuit court's action might indeed result in the loss of federal funds. *See Rosado v. Wyman,* 397 U.S. 397, 90 S. Ct. 1207, 25 L.Ed.2d 442 (1970); *Montalvo v. Chang,* 64 Haw. 345, 641 P.2d 1321 (1982). DSSH has not, however, brought to our attention any cases in which such a consequence has in fact occurred, and there is nothing in the record to intimate that such loss has occurred or will occur.

DSSH does cite *Montalvo v. Chang, supra,* in which the supreme court stated, "Although the States are given broad discretion in administering the program, noncompliance with federal requirements can result in a cut-off of matching funds." *Id.* at 348, 641 P.2d at 1324. However, the supreme court noted:

"When [federal] money is spent to promote the general welfare, the concept of welfare or the opposite is shaped by Congress, not the states." * * * And disputes on "whether federal funds allocated to the States are being expended in consonance with the conditions that Congress has attached to their use" are definitively settled by the Supreme Court.

*Id.* at 351-52, 641 P.2d at 1326 (citations omitted). Notwithstanding

---

[11] In the trial court, in its memorandum relating to Plaintiffs' motion for entry of judgment, DSSH conceded that the circuit court need only invalidate the new rules and continue the old ones in effect.

the threat, the supreme court held that the circuit court was empowered to award attorney's fees to plaintiffs' counsel out of a common fund created by a judgment in plaintiffs' favor.

Likewise, in this case we do not think that the threat precludes the court from granting affirmative relief. Indeed, the consequences that would have been visited upon the recipients had the court not granted affirmative relief militates in favor of it.

DSSH is authorized to "promulgate rules as deemed necessary for all public assistance." HRS § 346-14(1). Those rules must be established in accordance with HRS chapter 91. It would be manifestly unjust to hold that a court may declare an agency's rules to be invalid yet may not restore benefits terminated or reduced on the basis of those invalid rules.

## COSTA'S CROSS-APPEAL

Costa asserts that the trial court erred in not granting her motion for further relief.[12] She contends that DSSH did not comply with the July 20, 1982 Judgment because it provided retroactive benefits to reinstated recipients only from February through July 20, 1982. Costa further argues that DSSH's action improperly terminates benefits without adequate and timely notice as required by *Goldberg v. Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed. 287 (1970); that once reinstated the benefits should have been continued until a new notice was sent to each recipient and each recipient was afforded an opportunity for a fair hearing. Costa's argument is virtually the same as appellants' in *Punohu v. Sunn II,* 66 Haw. 489, 666 P.2d 1135 (1983).

DSSH argues that the notices originally sent to the recipients informing them that their benefits were being reduced or terminated pursuant to the new rules were adequate because the rules were properly promulgated effective July 20, 1982.

---

[12] Costa's motion was anomalous. Since the July 20, 1982 Judgment was not a final judgment, her motion could not be considered a motion to amend or reconsider or for relief under Rules 59 or 60, HRCP. On the other hand, it could be construed as either a request to the court to interpret the July 20, 1982 Judgment and determine whether DSSH had complied with it, or a motion to amend her complaint to attack the new termination. In view of our holding above, it is not necessary to analyze Costa's motion.

We think that the holding in *Punohu II* militates against Costa. In *Punohu II* DSSH appealed from a circuit court decision holding that adequate notice had not been given recipients-appellees and that recipients' benefits should continue unchanged until adequate notice was given. The supreme court reversed, holding that the notices sent out satisfied the requirements of due process as set forth in *Goldberg* and federal law.

In this case we, likewise, hold that the termination and reduction of benefits pursuant to the original notices were not a violation of due process requirements. The proposed terminations or reductions were based on the January 1982 Rules. When the July 20, 1982 Rules were promulgated, they were substantially similar to the January 1982 Rules in overall effect. The original notice informed the recipients that the law had changed and their benefits were to be reduced or terminated. They were then on notice and the termination and reduction under the July 20, 1982 Rules was not unfair.

While it is true that benefits were terminated in August 1982 without a prior hearing, those benefits had been restored by the July 20, 1982 Judgment and not because the recipients were factually entitled to them under the new federal law. That judgment merely enjoined DSSH from implementing the invalid rules until such time as DSSH complied with HRS § 91-3(a). That was accomplished on July 20, 1982. We do not deem it any more of a burden on the recipients to apply for reinstatement than to request a fair hearing. In either case they would have to show that they were entitled to benefits under the law and the rules.

This action started as one for a declaratory judgment. While reinstatement of the recipients and the benefits was justifiable ancillary relief, the circuit court was not required under the circumstances of this case to order the benefits continued beyond the time when the valid rules took effect and were in compliance with the new federal requirements.

## WALKER'S APPEAL

On September 28, 1983, Walker filed her appeal to the circuit court, together with a statement of the case. The record on appeal

was filed on October 13, 1983, and on November 16, 1983, Walker filed a motion to require DSSH to file an answer to her statement of the case. Subsequently, on November 23, 1983, Walker filed a motion for default judgment based on DSSH's failure to file an answer within twenty days after service of her statement of the case. Rule 12(a), HRCP (1981). Walker's opening brief was filed in circuit court on December 21, 1983. Both of Walker's motions were denied, and DSSH filed an answering brief on February 28, 1984. The circuit court entered its order affirming the DSSH decision on April 13, 1984, and Walker timely appealed. The only issue is whether the circuit court erred in denying her motion for default judgment.[13]

Walker contends that the language of Rule 72(e), HRCP, "The statement [of the case] shall be treated, as near as may be, as an original complaint and the provision of these rules respecting motions and answers in response thereto shall apply[,]" requires DSSH to file an answer and its failure to do so entitled her to a default judgment. We disagree.

First, we note that Walker's argument is contrary to the basic premise controlling judicial review of administrative decisions that a presumption of validity is accorded to decisions of administrative bodies acting within their sphere of expertise, and one seeking to upset the decision bears the heavy burden of making a convincing showing that it is invalid. *In re Kaanapali Water Corp.,* 5 Haw. App. 71, 678 P.2d 584 (1984). If the agency's decision could be upset merely by the failure to file an answer to the statement of the case, the presumption would be meaningless.

We read Rule 72(e) as subjecting the statement of the case to the same kinds of motions, such as to strike, for more definite statement, or to dismiss, as is a complaint. However, since the statement is only an outline by appellant of the nature of the case and its progress through the administrative machinery as indicated by the record, a formal answer is not required. We think it is significant that, while Rule 72 directs in specific terms what the parties must do in all other respects, it does not direct an answer to the state-

---

[13] Whether Walker's benefits were properly terminated without adequate and timely notice was discussed in our treatment of Costa's cross-appeal.

ment of the case.[14] Had the supreme court intended to require an answer, it could have easily directed an appellee to file one in the same manner that an appellant is required to file a statement of the case. Rule 72 differs in that respect from Rule 7(a) which directs an answer to a complaint.

Second, as was clearly stated by the supreme court in *Life of the Land v. Land Use Commission, supra,* the provisions of HRS § 91-14 and Rule 72, HRCP, "establish the nature of the proceeding before the court as an appeal." *Id.* 58 Haw. at 297, 568 P.2d at 1193. The powers of the circuit court over an administrative appeal substantially parallel those of an appellate court over appeals.

In appeals from the circuit court, as in agency appeals to the circuit court, the burden is on appellant to convince the appellate body that the presumptively correct action of the circuit court is incorrect. *Au-Hoy v. Au-Hoy,* 60 Haw. 354, 590 P.2d 80 (1979); *In re Kaanapali Water Corp.,* 5 Haw. App. 71, 77-78, 678 P.2d 584, 589 (1984). To that end, an appellant is required to file a notice of appeal, Rule 3(a), Hawaii Rules of Appellate Procedure (HRAP) (1984), order the transcript of the proceedings below, Rule 10(b), HRAP, and arrange for transmission of the record. The burden is upon appellant to comply with the rules. *See Life of the Land, supra,* at 297, 568 P.2d at 1193. The only positive requirement placed on an appellee is to file an answering brief, Rule 28(c), HRAP, except where appellee files a cross-appeal, Rule 4(a)(3), HRAP, or may wish to respond to an act by appellant, *see, e.g.,* Rule 10(b)(3), HRAP. So great is the burden on appellant to overcome the presumption of correctness that appellee's failure to file an answering brief does not entitle appellant to the relief sought from the appellate court, even though the court may accept appellant's statement of facts as correct. Rule 30, HRAP (1984).

We, therefore, conclude that DSSH's failure to file an answer to Walker's statement of the case did not entitle Walker to a default judgment.

---

[14] "Where by law an appeal may be tried before a jury," *see* Rule 72(g), HRCP, it might be advisable for the trial court to direct the appellee to file an answer in order to pinpoint the issues. However, we do not think that the court is required to do so, or that the subparagraph requires appellee to do so.

Affirmed.

*Brenton Rogozen* (Legal Aid Society of Hawaii of counsel) for plaintiffs-appellees, cross-appellants.

*Thomas D. Farrell,* Deputy Attorney General, for defendant-appellant, cross-appellee.