927 P.2d 1367

**KO'OLAU AGRICULTURAL CO., LTD., a Hawai'i corporation, Plaintiff-Appellant,**

v.

**COMMISSION ON WATER RESOURCE MANAGEMENT, Michael Wilson,[1] in his capacity as Chairperson of the Commission on Water Resource Management, Lawrence Miike, M.D., Richard H. Cox, Robert G. Girard, David Nobriga, and Herbert M. Richards, Jr., in their capacity as members of the Commission on Water Resource Management, Defendants-Appellees; and Punalu'u Community Association, George Fukumitsu, Charles Reppun, and John L. Reppun, Defendants-Intervenors-Appellees.**

No. 18675.

Supreme Court of Hawai'i.

Nov. 27, 1996.

1. The present action was initially instituted on August 17, 1992, against William W. Paty, then Chairperson of the Commission on Water Resource Management, and Commission members John C. Lewin, M.D., Michael J. Chun, Ph.D., Robert S. Nakata, Richard H. Cox and Guy K. Fujimura. Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c)(1), Wilson has been substituted for Paty as a defendant in this case. Similarly, Lawrence Miike, M.D., Robert G. Girard, David Nobriga, and Herbert M. Richards, Jr. have been automatically substituted as members of the Commission who were nominated and appointed in accordance with Hawai'i Revised Statutes (HRS) § 26-34 (1985).

Curtis T. Tabata and Gary B. K. T. Lee of Matsubara, Lee & Kotake, on the briefs, Honolulu, for plaintiff-appellant Koʻolau Agricultural Co., Ltd.

Sonia Faust and William M. Tam, Deputy Attorneys General, on the briefs, Honolulu, for defendants-appellees Commission on Water Resource Management, et al.

Lea O. Hong, Denise E. Antolini and Paul H. Achitoff of the Sierra Club Legal Defense Fund, Inc., on the briefs, Honolulu, for defendants-intervenors-appellees Punaluʻu Community Association, et al.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Plaintiff-appellant Koʻolau Agricultural Co., Ltd. (Koʻolau Ag) appeals from the circuit court's orders dated August 10, 1994 and January 13, 1995, which, respectively: (1) granted defendant-appellees Commission on Water Resource Management, et al.'s [hereinafter, collectively, the Commission] and defendants-intervenors-appellees Punaluʻu Community Association, et al.'s [hereinafter, collectively, Intervenors] motion to dismiss for lack of jurisdiction and dismissed as moot the Commission's and Intervenors' motions for protective orders; and (2) entered final judgment as to all claims against all parties. The sole issue on appeal [2] is whether the circuit court correctly concluded that it was without jurisdiction to entertain a declaratory judgment action challenging the Commission's designation, pursuant to the State Water Code (Code), HRS Chapter 174C, of a water management area (WMA).[3] Based upon our examination of the Code and the purpose of WMA designation, we agree with the circuit court's determination that it was without jurisdiction over the instant action for declaratory and injunctive relief. Accordingly, we affirm.

## I. *BACKGROUND*

On December 12, 1988, the Sierra Club Legal Defense Fund submitted a petition to the Commission, on behalf of Intervenors, to designate five Windward Oʻahu aquifers, spe-

---

2. Koʻolau Ag has extensively briefed the merits of its claims, which are not properly before us on appeal. The circuit court did not consider the merits due to its jurisdictional ruling, and our jurisdiction in this case is limited to review of that ruling. *Bush v. Hawaiian Homes Commission,* 76 Hawaiʻi 128, 133, 870 P.2d 1272, 1277 (1994) ("we have jurisdiction here on appeal, not of the merits but for the purpose of correcting an error in jurisdiction." (Citation omitted)).

3. A "water management area" is defined as "a geographic area which has been designated pursuant to section 174C–41 as requiring management of the ground or surface water resource, or both." HRS § 174C–3 (1993).

cifically the Kawailoa, Koʻolauloa, Kahana, Koʻolaupoko, and Waimanalo aquifers, as WMAs under the Code. The petition was brought pursuant to HRS § 174C–41(b), which provides in pertinent part that "[t]he designation of a water management area by the commission may be initiated by the chairperson or by written petition." After several public hearings and deferrals for further investigation, the Commission held a special meeting on May 5, 1992. Koʻolau Ag, which uses water from the Kahana aquifer, appeared and submitted testimony at that hearing, as well as at prior public hearings held in July 1989.

During the May 5, 1992 hearing, the Commission staff submitted an amended report, recommending, *inter alia,* the designation of all five aquifer systems as ground water management areas. At the conclusion of the hearing, the Commission voted unanimously to designate all five aquifer systems as WMAs. Notice of the designation decision was published on July 15, 1992.

On August 17, 1992, Koʻolau Ag, to preserve its purported rights in the Kahana aquifer, filed three duplicative actions challenging the Commission's decision: (1) a complaint for declaratory and injunctive relief in the circuit court (the instant case); (2) a direct appeal to this court, *see Koʻolau Agric. Co., Ltd. v. Commission on Water Resource Management,* 76 Hawaiʻi 37, 868 P.2d 455 (1994) (per curiam) [hereinafter, *Koʻolau Ag I* ]; and (3) an administrative appeal to the circuit court. In the declaratory judgment action, from which this appeal is taken, Koʻolau Ag alleged, as it did in each of the three actions, that the Commission's decision to designate the Windward aquifers as WMAs was based on the misapplication of the statutory designation criteria and that, therefore, the decision was in violation of the Commission's statutory authority. Koʻolau Ag also alleged that its due process rights were violated by the Commission's failure to conduct the designation process in accordance with the provisions of HRS chapter 91 governing contested cases. Koʻolau Ag's complaint alleged that "[t]he [circuit] Court has subject matter jurisdiction over the

claims for relief in this action pursuant to HRS §§ 603–21.5 and 632–1."

In *Koʻolau Ag I,* we dismissed Koʻolau Ag's direct appeal for lack of jurisdiction. We held that, because the Commission's decision to designate a water management area becomes final and appealable on the date it is published in a newspaper of general circulation and must be appealed within 30 days following publication, Koʻolau Ag's appeal was untimely where it was filed thirty-three days after the publication of the designation decision. 76 Hawaiʻi at 38, 868 P.2d at 456. Koʻolau Ag thereafter stipulated to dismiss its appeal to the circuit court, leaving only the instant declaratory judgment action unresolved.

On September 27, 1993, the Commission filed a motion to dismiss Koʻolau Ag's claims for declaratory relief, in which the Intervenors joined. By order filed August 10, 1994, the circuit court granted the motion to dismiss. The court reasoned that:

Haw.Rev.Stat. § 632–1 Declaratory Judgments provides in relevant part:

Where, however, a statute provides for a special form of remedy for a specific type of case, that statutory remedy shall be followed. . . .

Hawaii's Water Code, Haw.Rev.Stat. § 174C–46 sets out the process to be followed in designating a water management area:

*Findings of Fact; decision of the Commission.* After public hearings and any investigations deemed necessary have been completed, the Chairperson after consultation with the appropriate county council and county water board, shall make a recommendation to the commission for decision. If the commission decides to designate a water management area, it shall cause notice of its decision to be published in a newspaper of general circulation in the appropriate county and when so published its decision shall be final *unless judicially appealed.* (emphasis added)

Consequently, this Court must determine whether a declaratory judgment action is the appropriate means to challenge a decision of the Commission to designate

a water management area. In doing so, the Court must interpret the intent of the legislature when it provided under Haw. Rev.Stat. [§] 174C–46 that the decision shall be final "unless judicially appealed."

. . . .

Under the Code, where a contested case hearing has been held, the Legislature provides for a direct appeal to the Supreme Court on the record. When a request for a contested case hearing has been denied, that decision may be appealed "to the circuit court pursuant to [HRS § ] 91–14[.]" [Hawai'i Administrative Rules (]HAR[ ) ] § 13–167–54(i). Where, as here, no contested case proceeding is provided for or where none has been requested, the question arises under this statutory scheme as to which judicial review process is appropriate. (Under the Water Code, the subsequent water permitting process is where individual landowners apply for site specific permits; other affected persons may intervene and object and, if appropriate, request a contested case.)

This Court need not decide whether the appeal to the Circuit Court or to the Supreme Court is proper since plaintiff in this case sought both. . . . This Court only need decide if an original action by way of a declaratory judgment was intended by the Legislature in the unique statutory scheme provided under [HRS chapter] 174C and, in particular, [HRS §] 174C–46.

. . . .

[T]his Court finds that as a matter of law ... the Hawaii Water Code, read in conjunction with [HRS § 632–1], provides for judicial "appeal" of the [Commission's] decisions regarding designation, but does not allow a collateral original action to be brought by way of declaratory judgment. If such direct action were allowed, with the usual discovery requests and evidentiary hearings, it would effectively lead to the trial de novo, which the Legislature so plainly intended to prohibit for designation decisions by the Commission. Rather, the

Legislature provided in [HRS §] 174C–46 that judicial review is by appeal, which is on the record.

Ko'olau Ag timely appealed, raising a single point of error: "[t]he court below erred in ruling that it did not have subject matter jurisdiction over Appellant's claim, brought pursuant to HRS § 91–7, that Appellees violated Appellant's due process rights by failing to adhere to the statutory rule making requirements of HRS Chapter 91." [4]

## II. *STANDARD OF REVIEW*

■ The circuit court's dismissal of Ko'olau Ag's complaint for lack of jurisdiction presents a question of law, reviewable *de novo. Norris v. Hawaiian Airlines, Inc.,* 74 Haw. 235, 239, 842 P.2d 634, 637 (1992), *aff'd.,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). Likewise,

"The interpretation of a statute is a question of law reviewable *de novo." State v. Ramela,* 77 Hawai'i 394, 395, 885 P.2d 1135, 1136 (1994) (citation omitted). "Moreover, where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." *Id.* (citation and internal quotation marks omitted). "When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from language contained in the statute itself." *Crosby v. State,* 76 Hawai'i 332, 340, 876 P.2d 1300, 1308 (1994), *cert. denied sub nom., Crosby v. Hawai'i,* — U.S. — [115 S.Ct. 731, 130 L.Ed.2d 635] (1995) (citation and internal quotation marks omitted). And, "[w]e must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." *Franks v. City and County of Honolulu,* 74 Haw. 328, 335, 843 P.2d 668, 671 (1993) (citation omitted).

"[p]oints not presented in accordance with this section will be disregarded, except that the court, at its option, may notice a plain error not presented." HRAP Rule 28(b)(4) (1995).

---

4. Although Ko'olau Ag raises only one point of error on appeal, its opening brief cites six questions presented, five of which address the merits of its claims. Not only does this court not have jurisdiction over the merits, *see supra* note 2, but

"'When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute[,] an ambiguity exists.'" *Mehau v. Reed,* 76 Hawai'i 101, 109, 869 P.2d 1320, 1328 (1994) (quoting *Franks,* 74 Haw. at 335, 843 P.2d at 671).

*Housing Fin. & Dev. Corp. v. Castle,* 79 Hawai'i 64, 77, 898 P.2d 576, 589 (1995).

### III. *DISCUSSION*

On appeal, Ko'olau Ag recharacterizes its claims as allegations of improper rulemaking. It argues that the staff submittal recommending the designation, upon which the Commission relied in reaching its decision, (1) was based upon the concept of "developable yield," which is nowhere defined in the Code, and (2) expanded the statutory definition of "authorized planned use." Ko'olau Ag maintains that the staff's definition of these terms, adopted by the Commission in its decision, are "rules" [5] because they represent the Commission's interpretation of law and, therefore, should have been promulgated in accordance with the rulemaking provisions of HRS Chapter 91.

Although Ko'olau Ag concedes that the circuit court had no jurisdiction pursuant to HRS § 632–1, it argues that the court had jurisdiction pursuant to HRS § 91–7, which provides that:

(a) Any interested person may obtain a judicial declaration as to the validity of an agency rule as provided in subsection (b) herein by bringing an action against the agency in the circuit court of the county in which petitioner resides or has its principal place of business. The action may be maintained whether or not petitioner has first requested the agency to pass upon the validity of the rule in question.

(b) The court shall declare the rule invalid if it finds that it violates constitutional or statutory provisions, or exceeds the statutory authority of the agency, or was

adopted without compliance with statutory rule-making procedures.

Ko'olau Ag, however, does not seek a judicial determination of whether the Commission's interpretation of "developable yield" and "authorized planned use" are valid rules, which is the relief available under HRS § 91–7(b). It seeks, rather, invalidation of the WMA designation.

The Commission and Intervenors argue that the circuit court correctly based its ruling on the plain language of HRS § 174C–46—that the commission's designation decision "shall be final unless judicially appealed"—and that such language precludes an original action for declaratory and injunctive relief challenging the Commission's decision to designate a WMA.

Notwithstanding the phrase "unless judicially appealed," the Code fails to specify explicitly how, and to which court, an appeal from a WMA designation may be taken. This case thus highlights the uncertainty caused by inartful drafting of the Code. Nonetheless, after consideration of "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it," HRS § 1–15 (1993), we agree with the circuit court that it was without jurisdiction over Ko'olau Ag's complaint.

### A. *The State Water Code and WMA Designation*

The State Water Code was enacted in 1987 pursuant to constitutional mandate. 1987 Haw. Sess. L. Act 45, at 74. Article XI, section 7 of the Hawai'i Constitution (1978) provides in pertinent part that:

The State has an obligation to protect, control, and regulate the use of Hawaii's water resources for the benefit of its people.

The legislature shall provide for a water resources agency which, as provided by law, shall set overall water conservation, quality, and use policies; define beneficial

---

5. HRS § 91–1(4) (1993) provides:
    "Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency.

The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91–8, nor agency memoranda.

and reasonable uses; protect ground and surface water resources, watersheds and natural stream environments; establish criteria for water use priorities while assuring appurtenant rights and existing correlative and riparian uses and establish procedures for regulating all uses of Hawaii's water resources.

The Code established the Commission on Water Resource Management and bestowed upon it "exclusive jurisdiction and final authority in all matters relating to implementation and administration of the state water code, except as specifically provided in this chapter." HRS § 174C-7(a) (1993). The Code also provides that "[t]he commission shall adopt and enforce such rules as may be necessary or convenient to administer this chapter[,]" HRS § 174C-8 (1993), and that

> [a]ll proceedings before the commission concerning the enforcement or application of any provision of this chapter or any rule adopted pursuant thereto, or the issuance, modification, or revocation of any permit or license under this code by the commission, shall be conducted in accordance with chapter 91.

HRS § 174C-9 (1993). "Judicial review of rules and orders of the commission under this chapter shall be governed by chapter 91. Trial de novo is not allowed on review of commission actions under this chapter." HRS § 174C-12 (1993). The prohibition against trial de novo is consistent with the legislature's stated desire "to bring all water disputes before the Commission, rather than the courts, for expeditious and inexpensive resolution of conflicts both within and outside designated [WMAs]." Hse. Conf. Comm. Rep. No. 119, in 1987 House Journal, at 1069.

The central feature of the Code is a water use permitting process to insure all of the substantive water rights established under the common law and the Hawai'i Constitu-tion. HRS chapter 174C, Part IV. The Code is unique, however, in that the permitting process does not apply statewide. The legislature apparently interpreted the constitutional mandate "to protect, control, and regulate the use of Hawaii's water resources" as requiring protection only of water resources that have become threatened.

The Code, as enacted,[6] establishes a two-phase process for regulating water use. The first phase, WMA designation, requires the Commission to conduct scientific investigations, consider statutory criteria, consult the appropriate county mayor and water board, and conduct a public hearing upon published notice to determine whether to designate a watershed as a WMA "for the purpose of establishing administrative control over the withdrawals and diversions of ground and surface waters in the area to ensure reasonable-beneficial use of the water resources in the public interest." HRS §§ 174C-41 through -45.

> After public hearing and any investigations deemed necessary have been completed, the chairperson, after consultation with the appropriate county council and county water board, shall make a recommendation to the commission for decision. *If the commission decides to designate a water management area, it shall cause a notice of its decision to be published in a newspaper of general circulation in the appropriate county and when so published its decision shall be final unless judicially appealed.*

HRS § 174C-46 (emphasis added).

The Commission's discretion under the designation scheme is broad. There are eight ground water criteria and three surface water criteria that the Commission "shall consider" in "designating an area for water use regulation," HRS §§ 174C-44 and -45 (1993);[7] but, regardless of how many or how

---

**6.** The study commission appointed by the legislature to review issues relating to Hawai'i's water resources and to formulate a proposed water code, *see* 1982 Sess. L. Haw. Act 170, § 1 at 290, presumed that, pursuant to the State's constitutionally imposed obligation to protect and control all water resources in the state, the permitting requirements of the Code would apply statewide and drafted the proposed water code accordingly. Report of the Advisory Study Com-mission on Water Resources to the Thirteenth Legislature State of Hawaii, (Jan. 14, 1985) (ASC Report), at 18–26 and appendix E at 11–19.

**7.** HRS § 174C-44 (1993) provides in pertinent part:

few of the criteria are applicable, the Commission shall designate an area as a WMA "[w]hen it can be reasonably determined ... that the water resources in an area may be threatened by existing or proposed withdrawals or diversions of water." HRS § 174C–41(a). The statutory designation scheme thus delegates to the Commission the determination whether and when to bring an area under administrative management, within the limitations imposed by its "obligation to prevent any further harm by protecting, controlling, and regulating the use of Hawaii's water resources for the benefit of its people." 1987 Haw.Sess.L. Act 45, § 1 at 75.

█ The second stage of the regulatory scheme—administrative control through water use permitting—is triggered only by a WMA designation; in other words, the Commission has no authority to regulate water use through permitting in an undesignated area. Hawai'i, therefore, has a bifurcated system of water rights. In WMAs, the permitting provisions of the Code prevail; water rights in non-designated areas are governed by the common law. The legislature apparently did not contemplate that this anomaly would be a permanent feature of the Code. Act 45, section 5 of the 1987 Hawai'i Session Laws established a review commission, di-

rectly accountable to the legislature, "to perform a comprehensive review of the state water code and the development of recommendations for its improvement," including "water matters of fundamental importance which should be dealt with in a state water code, but which have not yet been incorporated, such as ... the institution of a comprehensive statewide permit system to regulate all types and uses of water[.]" *Id.* § 5(a).

█ The review commission was to begin work five years after the passage of the Code and submit its report to the legislature within two years. *Id.* § 5(b). The final report of the review commission was published in December 1994 and was the subject of statewide public hearings. The review commission recommended adoption of a statewide permit system to, *inter alia,* "eliminate the two sets of water laws under which water is currently regulated in Hawaii" and "do away with the designation process, which is cumbersome, costly, and time-consuming." Review Commission of the State Water Code, Final Report to the Hawaii State Legislature at 10 (December 28, 1994). To date, the legislature has not taken action on the report. Therefore, the Commission is required to designate an area as a WMA before it may fulfill the State's constitutional obligation to

In designating an area for water use regulation, the commission shall consider the following:

(1) Whether an increase in water use or authorized planned use may cause the maximum rate of withdrawal from the ground water source to reach ninety per cent of the sustainable yield of the proposed water management area;

(2) There is an actual or threatened water quality degradation as determined by the department of health;

(3) Whether regulation is necessary to preserve the diminishing ground water supply for future needs, as evidenced by excessively declining ground water levels;

(4) Whether the rates, times, spatial patterns, or depths of existing withdrawals of ground water are endangering the stability or optimum development of the ground water body due to upcoming or encroachment of salt water;

(5) Whether the chloride contents of existing wells are increasing to levels which materially reduce the value of their existing uses;

(6) Whether excessive preventable waste of water is occurring;

(7) Serious disputes respecting the use of ground water resources are occurring; or

(8) Whether water development projects that have received any federal, state, or county approval may result, in the opinion of the commission, in one of the above conditions. HRS § 174C–45 provides:

**Surface water criteria for designation.** In designating an area for water use regulation, the commission shall consider the following:

(1) Whether regulation is necessary to preserve the diminishing surface water supply for future needs, as evidenced by excessively declining surface water levels, not related to rainfall variations, or increasing or proposed diversions of surface waters to levels which may detrimentally affect existing instream uses or prior existing off stream uses;

(2) Whether the diversions of stream waters are reducing the capacity of the stream to assimilate pollutants to an extent which adversely affects public health or existing instream uses; or

(3) Serious disputes respecting the use of surface water resources are occurring.

"protect, control, and regulate the use of Hawai'i's water resources for the benefit of its people." Haw. Const. art. XI, § 7.

Once an area is designated as a WMA, "[n]o person shall make any withdrawal, diversion, impoundment, or consumptive use of water ... without first obtaining a permit from the commission." HRS § 174C–48 (1993). The burden is on the applicant to establish that the proposed use of water:

(1) Can be accommodated with the available water source;

(2) Is a reasonable-beneficial use as defined in section 174C–3;

(3) Will not interfere with any existing legal use of water;

(4) Is consistent with the public interest;

(5) Is consistent with state and county general plans and land use designations;

(6) Is consistent with county land use plans and policies; and

(7) Will not interfere with the rights of the department of Hawaiian home lands as provided in section 221 of the Hawaiian Homes Commission Act.

HRS § 174C–49 (1993). Existing uses are given preference under the Code; that preference is lost, however, if the existing user fails to apply for a permit to continue the existing use within one year from the effective date of a WMA designation. HRS § 174C–50(c).

The Commission is required to publish notice of permit applications for both existing and prospective uses, giving any person affected by the application the opportunity to object to the issuance of the permit, HRS § 174C–52 (1993), or to petition, in writing, for a contested case hearing. Hawai'i Administrative Rules (HAR) §§ 13–167–51 and –52. Where a contested case hearing is not required, the Commission is required to act on a permit application within ninety calendar days of deeming the application complete, and within one hundred eighty calendar days when a contested case hearing is required. HRS §§ 174C–50(d) and –53(b).

It is undisputed that, at the permitting stage, the rights of individual water users are affected and "contested case hearings," adhering to the trial-type adjudicatory procedures of HRS Chapter 91, are required. It is also explicit in the Code that judicial review of contested case hearings is by direct appeal to this court:

> Chapter 91 shall apply except where it conflicts with this chapter. In such a case, this chapter shall apply. Any other law to the contrary notwithstanding, including chapter 91, any contested case hearing under this section shall be appealed upon the record directly to the supreme court for final decision.

HRS § 174C–60 (1993). It is not at all clear, however, "whether [a] designation decision [is] the product of a contested case hearing, under HRS chapter 91, from which a direct appeal to the supreme court may be brought under HRS § 174C–60"—a question that we expressly left undecided in Ko'olau Ag I, 76 Hawai'i at 39 n. 3, 868 P.2d at 457, n. 3, and that we now answer in the negative. See infra section III.C.

HRS § 174C–60 is another example of the inartful drafting found throughout the Code. Although it refers to "any contested case hearing under this section," section 174C–60, itself, does not provide for contested case hearings. Given the placement of the section, the reference to contested case hearings "under this section" is probably a reference to hearings concerning the issuance, modification, or revocation of permits referred to in the sections immediately preceding HRS § 174C–60.

B.  *HRS § 91–7 Does Not Confer Jurisdiction on the Circuit Court to Entertain a Declaratory Judgment Action Challenging a WMA Designation*

By conferring on the Commission "exclusive jurisdiction and final authority in all matters relating to implementation and administration of the state water code, except as otherwise specifically provided in this chapter," HRS § 174C–7, and specifically providing that a WMA designation decision "shall be final unless judicially appealed," HRS § 174C–46, the legislature obviously intended an appeal as the exclusive means of obtaining judicial review of a WMA designation decision. It is well established that

where a statutory avenue for appeal of an agency decision is available, an original action for declaratory judgment does not lie. *See, e.g., Hawai'i's Thousand Friends v. City and County of Honolulu,* 75 Haw. 237, 245, 858 P.2d 726, 731 (1993); *Punohu v. Sunn,* 66 Haw. 485, 487, 666 P.2d 1133, 1134 (1983); *Travelers Ins. Co. v. Hawai'i Roofing, Inc.,* 64 Haw. 380, 386, 641 P.2d 1333, 1337 (1982) (holding that "independent system of legal relations" established by Workers' Compensation Law provides for appeal to Labor and Industrial Appeals Board and, therefore, debars declaratory relief). Because HRS § 174C–46 contemplates an appeal of a WMA designation, the circuit court determined that it was without jurisdiction under HRS 632–1.

■ Ko'olau Ag argues that the circuit court's reliance upon the rule established by *Hawai'i's Thousand Friends, Punohu,* and *Traveler's Insurance* was inappropriate in this case because the cited cases interpret the language of HRS § 632–1, which expressly precludes declaratory judgment actions where "a statute provides a special form of remedy for a specific type of case." Ko'olau Ag maintains that, because HRS § 91–7 does not contain the same exclusionary language, declaratory and injunctive relief pursuant to that statute is not precluded by the availability of an appeal for judicial review of WMA designations. We do not address this argument because, although we agree with the circuit court's result, our reasoning differs.

■ First, we are not persuaded that an appeal from a designation decision, which would preclude declaratory relief under HRS § 632–1, is actually available. Although it is clear that the legislature intended an appeal as the exclusive means of obtaining judicial review of the Commission's decision to designate a WMA, we can ascertain no provision in the Code that describes the mechanics of such an appeal or that confers jurisdiction on any court. Other than the language "final unless judicially appealed," there is no reference in the Code to appeals from WMA designations. HRS § 174C–60 provides in pertinent part that "any contested case hearing under this section shall be appealed upon the record directly to the supreme court." A

WMA designation, however, is not a contested case because it does not determine "the legal rights, duties, or privileges of specific parties." HRS § 91–1(5) (1993). Therefore, HRS § 174C–60 does not confer jurisdiction on this court, and, for the same reason, HRS § 91–14 does not confer jurisdiction on the circuit court.

Because Ko'olau Ag's appeals to this court and the circuit court were untimely filed, those appeals are no longer before us and we need not decide, in this case, how and to which court a WMA designation may be appealed. However, if the legislature intended to provide for an appeal of a WMA designation, as we believe it did, it will have to amend the Code to specify the procedures and provide jurisdiction for an appeal. Without such an amendment, we would likely be compelled to hold—in a case that squarely presents the issue—that there is no appeal available under HRS § 174C–46.

Second, even assuming there is no appeal available under HRS § 174C–46, the circuit court would still be without jurisdiction over a declaratory judgment action challenging a WMA designation. By operation of HRS § 174C–7(a), unless the legislature "specifically provide[s]" for an appeal, the Commission has "exclusive jurisdiction and final authority" over a WMA designation, which is indisputably a "matter relating to implementation and administration of the state water code." Therefore, a WMA designation is not judicially reviewable.

■ The Commission, by virtue of its agency expertise, is certainly in a better position than the courts to evaluate "scientific investigations and research" to determine whether a water resource "may be threatened by existing or proposed withdrawals and diversions of water." Moreover, the consequences of an erroneous designation decision by the Commission do not indicate a need for judicial review because the rights of individual water users are fully protected in the permitting process. Therefore, even if the Commission's decision to designate a WMA were not supported by the scientific data or the statutory criteria, the effect would be that the erroneously designated

WMA would be given more protection than statutorily required. This result is in no way inconsistent with the State's constitutional obligation to "protect, control, and regulate the use of Hawaii's water resources for the benefit of its people." Haw. Const. art. XI, § 7. Accordingly, we agree with the circuit court's conclusion that it had no jurisdiction pursuant to HRS § 632–1 because, if an appeal is available, it is the exclusive avenue for judicial review of a WMA designation; if no appeal is actually provided, the Commission has exclusive jurisdiction and a WMA designation is not judicially reviewable.[8]

Ko'olau Ag argues that the circuit court nonetheless has jurisdiction over its declaratory judgment action pursuant to HRS § 91–7 because HRS § 174C–12 "specifically provides" for judicial review of the Commission's rules. Sections 174C–12 and 91–7, however, assume the existence of a "rule." We are not persuaded that the Commission, by interpreting and applying the relevant Code provisions in deciding whether to designate a WMA, engaged in rulemaking such that its written statements, expressing its interpretation and application of law, become "rules" subject to review in an original proceeding in the circuit court. It appears from Ko'olau Ag's complaint that its actual dispute is with the Commission's *application* of its unchallenged rules defining "sustainable yield" and "authorized planned use" in language identical to that of HRS § 174C–3. HRS § 91–7, however, does not give the circuit court jurisdiction to review the application of a rule. *See Puana v. Sunn,* 69 Haw. 187, 189, 737 P.2d 867, 868 (1987) ("Although HRS § 91–7 does not give the circuit court jurisdiction to hear a challenge to the application of a rule, it clearly does provide for attacks on a rule's validity.").

Moreover, even if we were to agree with Ko'olau Ag that the concepts of "developable yield" and "authorized planned use" were, in fact, improperly promulgated rules, the circuit court is without jurisdiction to grant the requested relief—the invalidation of the WMA designation. Ko'olau Ag cites *Costa v. Sunn,* 5 Haw.App. 419, 697 P.2d 43, *cert. denied,* 67 Haw. 685, 744 P.2d 781 (1985), for the proposition that the circuit court may vacate the WMA designation decision if it determines that it was based upon improperly promulgated rules. In *Costa,* the Intermediate Court of Appeals (ICA) considered whether the circuit court was authorized to reinstate the preexisting rules and order the Department of Social Services and Housing (DSSH) to reinstate all recipients or applicants who may have had their benefits reduced, terminated or denied pursuant to new DHHS eligibility rules declared to be invalidly promulgated. The ICA held that the court was authorized to grant ancillary relief, explaining that "[i]t would be manifestly unjust to hold that a court may declare an agency's rules to be invalid yet may not restore benefits terminated or reduced on the basis of those invalid rules." *Id.* at 427, 697 P.2d 49.

*Costa,* however, is distinguishable. First, in *Costa,* the invalidated rules redefined the eligibility for benefits; the subsequent termination or reduction of benefits resulted directly from the application of the invalid rules. In this case, the challenged "rules" relating to developable yield and authorized planned use implicate only one of the three statutory criteria found by the Commission to warrant designation of the Kahana aquifer. Therefore, even if the challenged "rules" were to be declared invalid, the WMA designation was independently supported. Second, unlike the circumstances in *Costa,* no one suffered any deprivation of benefits or rights by virtue of the Commission's definition of "developable yield" or "authorized planned use." Finally, and key to our decision, unlike the statutory scheme applicable in *Costa,* the Code expressly provides that

---

8. The Commission's erroneous *refusal* to designate a WMA, on the other hand, would be in breach of its constitutional and statutory duties. In such a case, if an appeal is not available, we believe that resort to mandamus might be justified. *See, e.g., State ex rel. Marsland v. Town,* 66 Haw. 516, 523, 668 P.2d 25, 30 (1983) (stating that "[r]esort to mandamus is justified where the petitioner has a clear and indisputable legal right to performance of a duty owed by respondent and the petitioner lacks other means of adequately redressing the wrong or of obtaining the relief sought." (Citation, internal quotation marks, ellipses, and brackets omitted.)).

the WMA designation shall be "final unless judicially appealed." HRS § 174C–46.

We are persuaded by the language and structure of the Code that the legislature did not intend that a designation decision may be challenged by way of a declaratory judgment action. Allowing a WMA designation to be challenged in an original action, pursuant to HRS § 91–7, would effectively lead to a trial *de novo*, which the legislature explicitly prohibited on review of the Commission's actions under the Code. HRS § 174C–12. More significantly, however, allowing an original action under HRS § 91–7 as a means of challenging a WMA designation would introduce unnecessary uncertainty into the permitting process. By specifying an appeal as the exclusive avenue of judicial review of a WMA designation decision, the Code sets a statutory limit on the time within which parties may challenge the designation thus establishing a date certain by which any uncertainty regarding the status and regulation of water in a WMA will be resolved. *See Ko'olau Ag I*, 76 Hawai'i at 38, 868 P.2d at 456 (holding that Commission's decision to designate a WMA "must be appealed within 30 days following publication.").

If a declaratory judgment action under HRS § 91–7 were allowed, such an action could be brought up to three years following the WMA designation. *See* HRS § 91–3(2)(e) (1993). Allowing such a mechanism to review a designation decision would result in irreconcilable conflicts and lead to absurd results. For example, an existing user in a newly designated WMA must apply for a permit within one year of the effective date of the WMA designation in order to have the application proceed as one for an existing use, and the Commission is required to act on the application within 180 days if a contested case hearing is required. In the case of an existing use application, then, if a declaratory judgment action pursuant to HRS § 91–7 were allowed, the designation would still be subject to challenge for more than

eighteen months *after* the applicant had successfully completed the application, met his burden in a contested case hearing, and been granted a permit.

A three-year period of uncertainty regarding the status and validity of a WMA designation would render the permitting process chaotic; persons would not know whether permits were required, or whether, once obtained, the permits were valid. A three-year wait to achieve finality, after it has been determined that the water resources in an area might be threatened, would conflict with the need to regulate water use and interfere with the State's constitutional obligation to "protect, control, and regulate the use of Hawai'i's water resources for the benefit of its people." Haw. Const. art. XI, sec. 7.

### C. Ko'olau Ag's Due Process Rights Were Not Violated

■ Ko'olau Ag contends (1) that the reference to a "judicial appeal" in HRS § 174C–46 indicates that the legislature intended a WMA designation proceeding to be conducted as a contested case hearing pursuant to HRS Chapter 91 [9] and (2) that the Commission's failure to do so violated its due process rights. Essentially, Ko'olau Ag maintains that the statutory designation procedures followed by the Commission, HRS §§ 174C–41 through –46, are unconstitutional:

> The Water Commission's interpretation that the State Water Code does not require contested case proceedings in the designation of WMAs may streamline and facilitate the process for the Water Commission, however, it frustrates and eliminates challenges to its decision to designate a WMA. Although this may allow it to expedite the designation proceeding by following the more informal quasi-legislative procedures it is at the expense of a party's due process rights.

We disagree.

As we interpret the Code, the legislature did not intend that a WMA designation pro-

---

**9.** HRS § 91–9 provides in pertinent part that, "[i]n any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice." Sections 91–9 *et seq.* describe the procedural requirements of such a hearing, including: (1) reasonable notice; (2) the opportu-

nity to present evidence and argument; (3) an agency decision on the record; (4) rules of evidence, including the right of cross-examination; (5) a written decision accompanied by findings of fact and conclusions of law; and (6) prohibition against ex parte communications.

ceeding be conducted as a Chapter 91 contested case hearing. The legislature, instead, designed a statutory process that is specific to designation of WMAs and mandated that *"[c]hapter 91 shall apply except where it conflicts with this chapter. In such a case, this chapter shall apply."* HRS § 174C–60. Because the statutory designation procedure conflicts with the contested case hearing procedures outlined in chapter 91, it is the specific procedure described in HRS §§ 174C–41 *et seq.* that must be followed in deciding whether to designate a WMA.

 By contrast, permit applications, when challenged, do trigger the "contested case hearing" provisions of HRS chapter 91. With respect to permit applications, nothing in the Code conflicts with the provisions of HRS chapter 91 and, therefore, pursuant to HRS § 174C–60, "[c]hapter 91 shall apply."

The difference between procedures governing WMA designations, on the one hand, and permit applications, on the other, is eminently logical given the difference between the issues presented for decision. At the permitting stage, the Commission is required to determine the respective rights of water users; because recognized property interests could be affected, applicants' due process rights are implicated and contested case hearings pursuant to HRS chapter 91 are required. We have recognized, however, that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Sandy Beach Defense Fund v. City Council,* 70 Haw. 361, 378, 773 P.2d 250, 251 (1989) (citation and internal quotation marks omitted).

Designation of a WMA, unlike water use permitting neither affects any property interest of existing or potential water users nor requires the determination of any individualized facts. Designation requires a determination, "after conducting scientific investigations and research, that the water resources in an area may be threatened by existing or proposed withdrawals or diversions of water[.]" HRS § 174C–41(a). Ko'olau Ag simply has no property interest in the Commission's determination as to whether there is an overall threat to the water resources in

Kahana. We therefore reject Ko'olau Ag's argument that the failure to hold a contested case hearing on the WMA designation denied it procedural due process. It is only at the permitting stage that property interests of applicants are potentially affected, and, thus, the contested case hearing procedures of HRS chapter 91 are required to satisfy due process.

## IV. CONCLUSION

For the reasons stated above, we affirm the order of the circuit court dismissing Ko'olau Ag's complaint for lack of jurisdiction.