LINDA BOW KAM NAKATA, nka LINDA BOW KAM LEONG,
Plaintiff-Appellee, *v.* PAUL T. NAKATA, Defendant-Appellant

NO. 7947

(FC-D NO. 106748)

MARCH 1, 1982

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

Defendant-Appellant Paul T. Nakata (Paul) appeals the lower court's refusal to enforce its consent decree so as to allow him to purchase the marital residence by paying 75% of its "net equity" value. We hold that the family court abused its discretion when it amended its consent decree, and we reverse.

Plaintiff-Appellee Linda Bow Kam Nakata (Linda) and Paul were married on September 22, 1962. They have four children who, at the filing of the complaint, were ages 15, 13, 8, and 6.

Linda filed her complaint for divorce on June 2, 1978. On August 24, 1978, Linda and Paul entered into a comprehensive Agreement Incident to and in Contemplation of Divorce (Agreement).

The Agreement called for Linda to be awarded custody and child support but no spousal support.

The Agreement also contained the following:

7. *RESIDENTIAL PREMISES, 1257 ALA ALOALO STREET, HONOLULU, HAWAII.* Wife shall have the exclusive right to possession and to occupy the residential premises located at 1257 Ala Aloalo Street, Honolulu, Hawaii until sale of the premises which sale shall be on the following terms:

"Net Equity" is defined hereinafter as $127,000.00 less the outstanding encumbrances less the costs of sale, if any, at time of payment.

Wife shall have six months in which to come up with payment of 25% of the net equity in the residence based upon the appraisal of Larry Medeiros dated June 13, 1978, which appraisal is attached hereto and incorporated herein by reference as Exhibit "C" setting the Fair Market value of said residence at $127,000.00. That the Wife must make at least one-half of such payment in cash and the rest by way of a promissory note at 6% per annum interest, payable in five years.

That should wife sell either or both of her parcels of real estate on the island of Molokai within said 6 months, Husband will as a credit against payment of the 25% of the net equity by Wife accept 50% of the costs of such sale of Molokai real estate.

That should Wife be unable to come up with said 25% payment, it is agreed between the parties that the residence shall be listed with a broker to be mutually selected by the parties' attorneys and the first offer received at or in excess of the Fair Market appraisal shall be accepted provided that such offer is by way of a cash purchase.

That either party to this action may purchase the residence at any time subsequent to the elapsing of six months from the date that this document is executed.

That in the event of a sale to a third party the net equity

shall be divided between the parties, seventy-five percent (75%) to the Wife and twenty-five percent (25%) to the Husband.

The record indicates that the residence was subject to a $40,000 mortgage payable at the rate of $440 per month.

A Decree Granting Absolute Divorce and Awarding Child Custody, filed on September 27, 1978, approved the Agreement and incorporated it by reference.

On April 16, 1979, Paul moved for and caused the issuance of an Order to Show Cause After Decree because "[s]ix months have elapsed and [Linda] has not complied with the payoff provision in said agreement. [Paul] is now willing and able to purchase the residence and has offered to purchase the property pursuant to said agreement."

The case was presented to the lower court via memos. Linda's position was that although the Agreement did not specifically say so, it was always understood and agreed that her purchase was conditioned upon the sale of her Molokai property, that she did her best to sell the Molokai property and finally sold it but not before the six months expired, and that the court had the power to and should extend the six months to allow her to purchase the house upon the favorable terms stated in the decree.

Paul's position was that Linda had six months to buy the premises but failed to do so and that he was now entitled to buy it by paying 75% of the "net equity" value.

On June 3, 1980, the lower court issued a Decision and Order as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

A. Both parties shall forthwith obtain by mutual agreement a current appraisal of the residence at 1257 Ala Aloalo Street, Honolulu, Hawaii.

B. Upon obtaining such an appraisal, the parties shall forthwith determine the net equity as follows:

"Net equity" is defined hereinafter as agreed current appraisal less encumbrances less costs of sale.

C. Further, the plaintiff will be given credit for her mortgage payments, taxes, interest and fire insurance during the interim period, said figure for the credit, however, to be

increased proportionately to reflect the rate of the increase in the equity during the interim from the time of the previous order and not merely the actual dollar amount paid.

D. The plaintiff must make at least one half of such payment of the purchase price in cash and the rest by way of a promissory note at 6% per annum interest, payable in five years and the plaintiff must exercise this right to purchase within three months of this order.

E. Upon the plaintiff's failure to exercise the right to purchase within three months of this order, the defendant shall be afforded three months thereafter to purchase the aforedescribed property at the appraisal amount described in paragraph B above, provided that the defendant do so by cash purchase and provided further that the plaintiff be given the further credits as described in paragraph C above.

F. In the event that either party is unable to purchase the residential premises during the time indicated above, the parties shall immediately list said property with a broker to be mutually selected by the parties and the first offer received at or in excess of the appraisal shall be accepted provided that such offer is by way of a cash purchase.

G. In the event of a sale to a third party, the net equity shall be divided between the parties, seventy-five per cent (75%) to the plaintiff and twenty-five per cent (25%) to the defendant.

The stated basis for the lower court's decision was:

Plaintiff failed to meet the six months deadline because of her inability to sell either one or both of her parcels of real property on the island of Molokai; the parties both anticipated and recognized in the Agreement that the plaintiff's ability to purchase the defendant's interest in the marital residence at 1257 Ala Aloalo Street, Honolulu, Hawaii, was contingent upon the sale of the Molokai property; it does not appear that the failure to sell the Molokai property within the six months was wholly within the plaintiff's control, and that she acted at all times in other than good faith in attempting to sell said Molokai property.

Linda argues that the lower court did not modify the decree; it merely clarified uncertainties and ambiguities contained within it. Paul argues that the lower court amended the clear, unambiguous,

and enforceable language of its consent decree.

When interpreting a decree, the determinative factor is the intention of the court as gathered from all parts of the decree itself. *Jendrusch v. Jendrusch,* 1 Haw. App. 605, 623 P.2d 893 (1981). On this issue, we are not bound by the lower court's interpretation. *Id.* Upon review of the decree, we hold that the lower court's interpretation that the decree gave Linda six months or until she sold her Molokai property, whichever came later, is an erroneous interpretation.

Linda cites *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978), and further argues that the family court has the power to modify its decree because it has the power to relieve a party to a contract from forfeiture.

We have some disagreement with Linda's interpretation of *Jenkins. See Kaiman Realty, Inc. v. Carmichael,* 2 Haw. App. 449, 634 P.2d 603 (1981). Moreover, even if *Jenkins* is authority for the proposition which Linda suggests it is, we do not believe it has any application to a court's decree which is what we are dealing with in this case. *See Jendrusch v. Jendrusch, supra.*

The authority for the lower court's action comes, if at all, from Rule 60(b), Hawaii Family Court Rules (HFCR). Although Linda did not file a counter motion, her memo in opposition to Paul's motion can be construed as a Rule 60(b), HFCR, motion for relief from the decree, and for purposes of this opinion, we will treat it as such.

The issue, then, is whether the lower court abused its Rule 60(b), HFCR, discretion when it reopened and amended its decree. *Gamino v. Greenwell,* 2 Haw. App. 59, 625 P.2d 1055 (1981).

The record shows that the Agreement was entered into after the complaint was filed, after various depositions had been taken, after a stipulation between the parties for *pendente lite* relief had been approved by the court, and while both parties were represented by counsel. The Agreement states, *inter alia,* that:

1. This Agreement shall be effective only in case a decree of divorce shall be entered in the proceedings hereinabove referred to, and only in case such decree shall not be inconsistent with the provisions of this Agreement, and only in case this Agreement shall be approved by the Judge hearing the cause between the parties, as provided in Section 573-2 of the Hawaii Revised Statutes, as amended, and this Agreement shall be effective only from and after the date of said decree of divorce and said ap-

proval.

The record further shows that at the request of both parties, the lower court approved the Agreement and incorporated it into the decree of divorce without any amendments.

If at the time the divorce was granted the lower court decided to change the Agreement before incorporating it into the decree, it would have been required to obtain the consent of both parties or to move the case from the uncontested calendar to the contested calendar. That being the situation, from the standpoint of fairness, it should not be any easier to change the Agreement after the incorporation than it was before the incorporation.

Generally, the broad power granted by Rule 60(b), HFCR, is not for the purpose of relieving a party from free, calculated, and deliberate choices he, she, or it has made. 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2864 (1973); 46 AM. JUR.2d, *Judgments,* § 688 (1969). It should be used only where the relief will further justice without adversely affecting substantial rights of the parties. 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* §§ 2857, 2864 (1973). We conclude that its use in this case was excessive.

We hold that absent consent of the parties and the court, the decree in this case must be enforced as it is written,[1] the only variation being that the lower court shall give the broker a reasonable period of time not in excess of three months to solicit cash offers from all interested parties, including Linda and Paul.[2] The offer shall be accompanied by a deposit of a specified percentage of the cash offer to be determined by the family court.[3] Mandatory closing shall be scheduled within a reasonable period of time not to exceed three months after the last day scheduled for the receipt of offers.[4]

---

[1] If she is the purchaser, Linda is entitled at closing to a credit of 50% of the costs of the sale of her Molokai property only with respect to parcels "sold" within the six months period. If she is not the purchaser, she is entitled to 75% of the net proceeds of the sale. If Paul is not the purchaser, he is entitled to 25% of the net proceeds of the sale.

[2] This variation is allowed because the "first offer" procedure specified in the decree is wholly unworkable.

[3] [4] Since effectively Linda would be purchasing a 25% interest and Paul would be purchasing a 75% interest, the lower court will have to determine what each must deposit upon making an offer and what one or the other must pay at closing if he or she is the successful offeror.

Reversed and remanded for further proceedings consistent with this opinion.

*Lloyd Y. Asato* for defendant-appellant.

*Stephanie Rezents (Daniel S. Ukishima* on the brief; *Ukishima & Matsubara* of counsel) for plaintiff-appellee.