909 P.2d 553

Ruby Ann BETTENCOURT, nka
Ruby Ann Richardson,
Plaintiff–Appellee,

v.

Calvin G. BETTENCOURT, Jr.,
Defendant–Appellant.

No. 18174.

Supreme Court of Hawai'i.

Dec. 13, 1995.

Lionel T. Oki, on the briefs, Waianae, for defendant-appellant.

Ronald P. Tongg of Tongg & Tongg, on the briefs, Honolulu, for plaintiff-appellee.

MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Defendant-appellant Calvin G. Bettencourt, Jr. (appellant) appeals from the family court's August 6, 1993 order requiring, *inter alia*, that appellant pay attorney's fees incurred by plaintiff-appellee Ruby Ann Bettencourt, nka Ruby Ann Richardson (appellee), as a result of appellant's failure to follow court rules [hereinafter, the sanction order]. Appellant also appeals from the family court's May 23, 1994 order, wherein the court held that the sanction order "currently stands and is enforceable" [hereinafter, the May 23, 1994 order]. Because we have no basis upon which to review the sanction order, we dismiss that portion of appellant's appeal, and we affirm the May 23, 1994 order. Additionally, we are referring the supreme court record of this case to the Office of Disciplinary Counsel to determine whether the lack of professionalism demonstrated by appellant's counsel in this case violates the Hawai'i Rules of Professional Conduct (HRPC).

## I. *BACKGROUND*

Appellant and appellee [hereinafter, the Bettencourts] were divorced in 1984. On May 12, 1993, appellee sought, via motion, a modification of court-ordered child support payments based upon a material change in the circumstances of the parties. The matter was scheduled for a "Motion to Set Conference" on July 28, 1993. Appellant apparently requested a half-day hearing, arguing that he intended to present witnesses to show that (1) the Bettencourts' daughter was not sincere in her desire to attend college, but had been put up to it by her mother as a ploy to continue her child support, and (2) the $1,500 per month income imputed to appellee should more properly be $2,500 per month.

Judge Allene Suemori presided over the motion to set conference and set the matter of child support for hearing on the expedited trial calendar for August 6, 1993, which was reflected in her order filed July 28, 1993. Appellant's counsel, Lionel T. Oki, signed the July 28 order, approving it as to form. At the August 6 hearing, Oki attempted to call non-party witnesses, although he had not submitted a witness list and the procedures for expedited hearings allow only party witnesses. Judge Suemori, apparently after a contentious exchange with Oki, terminated the hearing and ordered that the case be set for (1) pre-trial conference on August 26, 1993, (2) calendar call on September 3, 1993, and (3) trial for the week of September 13, 1993. The judge further ordered appellant to pay appellee $360 "towards [appellee's] attorney's fees for resetting this matter on the trial calendar."

On August 26, 1993, appellant filed a motion for reconsideration of Judge Suemori's sanction order, and the matter was set for hearing on September 7, 1993. At appellant's request, the September 7 hearing date was continued to October 8, 1993. On that date, appellant orally moved for a continuance of the hearing. Although the motion was granted, the hearing was not continued to a date certain but "to [be] moved on by either party via motion."

On February 7, 1994, appellee filed a motion for an order to show cause, seeking, *inter alia*, a hearing on "why [appellant's motion for reconsideration], filed herein on August 26, 1993, should not come on for hearing, or in the alternative, be dismissed with prejudice." The motion came on for hearing on February 28, 1994, before then-district family judge Victoria Marks. At the hearing, Judge Marks indicated that she was disinclined to consider the issue of the sanction order because it would be more appropriately heard by Judge Suemori. Appellee's counsel persisted in his requests that the matter be calendared, noting that "our feeling, anyway, is that they don't want to bring it up because it's going to mean if they lose they have to pay the three hundred sixty dollars. I wanted to bring this to a head. My client really wants to get on with her life." The matter regarding the sanction order was then set for hearing on May 9, 1994, before Judge Suemori.

The May 9 hearing was continued to May 16, 1994, due to Judge Suemori's illness. Oki was ill on May 16 and called appellee's counsel, who agreed to continue the hearing to May 23, 1994. However, Oki did not appear at the May 23 hearing at which district fami-

ly judge Linda Luke was presiding. At the time of the hearing, Judge Luke stated: "I have not seen any order to the contrary that either reconsiders or alters that order of August 6, 1993 so that it should be enforceable forthwith." Thus, the May 23, 1994 written order stated that "Judge Suemori's order of August 6, 1993 awarding [appellee] $360 in attorney's fees currently stands and is enforceable."

On June 13, 1994, appellant filed a motion for reconsideration of the May 23, 1994 order, which was denied without hearing, and this appeal followed.

## II. *DISCUSSION*

### A. *Appellant's Opening Brief*

 Preliminarily, it appears both necessary and appropriate that we address the form and content of appellant's opening brief. Oki was granted five extensions of time in which to file the opening brief on behalf of appellant, the last of which was embodied in an order for Oki to show cause why he failed to file the opening brief in a timely manner. Notwithstanding the five extensions, appellant's brief in almost no respect conforms to the requirements of Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b), which we have held is, alone, sufficient basis to affirm the judgment of the circuit court. *See, e.g., O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 385, 885 P.2d 361, 363, *reconsideration denied*, 77 Hawai'i 489, 889 P.2d 66 (1994). First, HRAP 28(a) provides in pertinent part that, "[e]xcept after leave granted, the clerk will not receive an opening or answering brief of more than 35 typewritten pages[.]" Appellant's brief actually totals thirty-seven pages. Although the last numbered page of the brief reflects the number "35," the brief contains two pages, with different text, that are designated as page "20" and an unnumbered page after the last page numbered 35. Were it not for the "creative" page number-

ing technique, the opening brief would not have been accepted for filing.

Second, HRAP Rule 28(b)(3) requires that an opening brief contain

[a] concise statement of the case, containing the facts material to consideration of the questions and points presented, *with record references supporting each statement of fact or mention of trial proceedings.* In presenting those material facts[,] all supporting and contradictory evidence shall be presented in summary fashion and with appropriate record references. *There shall be appended to the brief a copy of the findings of fact and conclusions of law, or opinion or decision, if any, unless otherwise ordered by the court.*

(Emphases added.) The opening brief filed by Oki on appellant's behalf does not contain a single citation to the record, nor does it include copies of the decisions from which the appeal is taken.

Third, appellant's statement of points on appeal similarly fails to comport with the requirements of HRAP Rule 28(b)(4), which provides in relevant part that "[e]ach point shall refer to the alleged error committed by the court or agency upon which appellant intends to rely. The point shall show where in the record the alleged error occurred and where it was objected to[.]"

Finally, as vexatious as the aforementioned departures from HRAP Rule 28(b) are, it is the failure to heed HRAP Rule 28(b)(7) that most warrants comment in this case. Rather than "exhibiting clearly the points of fact and of law being presented, citing the authorities relied upon," HRAP Rule 28(b)(7), the argument section of appellant's brief excoriates individual family court judges personally in a scathingly contemptuous diatribe that has no place in appellate argument.

Despite the existence of arguably applicable precedent,[1] the only "point of law" cited and argued by appellant was that the family

---

1. *See, e.g., In re Dubin*, 9 Haw.App. 249, 833 P.2d 85 (1992) (vacating and remanding a $500 sanction where authority for sanction not specified by court because, if imposed pursuant to the Rules of the Circuit Court Rule 15(b) or the court's inherent powers, sanction violated appellant's rights to notice and hearing, and, if imposed for

contempt under Hawai'i Revised Statutes (HRS) § 710–1077, alleged offense was indirect contempt, not subject to summary conviction); *Kukui Nuts of Hawai'i, Inc. v. R. Baird & Co., Inc.*, 6 Haw.App. 431, 726 P.2d 268 (1986) (award of sanctions pursuant to court's inherent powers requires specific finding of bad faith).

court, by imposing sanctions, failed to give proper consideration to the "Aloha Spirit," and thereby violated HRS § 5–7.5(b) (1993), which provides in pertinent part:

> In exercising their power on behalf of the people and in fulfillment of their responsibilities, obligations and service to the people, ... judges of the appellate, circuit, and district courts may contemplate and reside with the life force and give consideration to the "Aloha Spirit."

The remainder of the argument section consists of lengthy quotations from the hearing transcript[2] and Oki's running sarcastic commentary, carried on in footnotes throughout the opening brief. For example, where the court commented that calling non-party witnesses without a witness list was an unfair surprise, the comment was footnoted with the remark that

> If this is not an example of an out-an-out [sic] abuse of power, then the author [Oki] does not what [sic] is. At this point, the only **surprise** that played in appellant's counsel's thought was "how'd she ever become a judge!" Followed by "why am I putting up with this b-------?" ODC, baby!

(Bold in original.) The judge apparently afforded Oki one last chance to provide a "complete answer" to her repeated questions about how many witnesses he planned to call and how long he expected to take. Again commenting in a footnote, Oki states:

> Discretion at this point prevents the author [Oki] to [sic] describe Appellant counsel's thoughts were [sic] at this point. But, the appellate courts being the overseer of the lower courts, if counsel saw fit at that time to provide the trial judge with the sort of "complete answer" demanded, could anything said in direct response to this specific question be deemed contemptuous as it seems to the author that this particular trial judge undoubtedly will again ill-advisedly format her question in similar—if not identical—fashion. And it seems ironically unfair to deprive her of an answer, a complete answer.

2. Because, as discussed *infra*, the hearing transcript was never made a part of the record on appeal, these quotations alone are improper. *See Orso v. City and County of Honolulu*, 55

Additional footnotes (1) refer to the proceedings as "being similar to trying to take a leak at the Pali on a windy day," (2) ask "[i]s this a script right out of Saturday Night Live or what," and (3) refer to a family court judge as "a Rell Sunn Look-alike."

This kind of incivility is demeaning to the legal profession and should not be tolerated. As we have stated,

> lawyers who know how to think but have not learned how to behave are a menace and a liability ... to the administration of justice.... [T]he necessity for civility is relevant to lawyers because they are ... living exemplars—and thus teachers—every day in every case and in every court; and their worst conduct will be emulated ... more readily than their best.

*In re Matter of Hawaiian Flour Mills, Inc.*, 76 Hawai'i 1, 18, 868 P.2d 419, 436 (1994) (Levinson, J., concurring) (quoting former Chief Justice Burger in his address to the American Law Institute, Washington, D.C., reported in the *National Observer*, May 24, 1971, and reprinted in D. Schrager and E. Frost, *The Quotable Lawyer* 193 (1986)).

"[L]awyers represent their clients' interests best when they discharge their responsibilities in accordance with the preamble to the Hawaii Rules of Professional Conduct (HRPC)[.]" *Id.* at 17, 868 P.2d at 435 (Levinson, J., concurring). Among the "lawyer's responsibilities" enumerated in the preamble is the following:

> ■ A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

Haw. 37, 514 P.2d 859 (1973) (matters outside record on appeal may neither be appended nor referred to in appellate brief).

Although the preamble is worded in precatory terms, the preeminent rule of the HRPC is mandatory and states that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." HRPC Rule 1.1 (1995). The commentary to the rule notes that "[c]ompetent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners."

The opening brief, which was filed in this case, is an egregious example of the substitution of rancorous rhetoric for legal and factual analysis in appellate briefs. Not only does this burden the court, but, more importantly, it is adverse to the client's interests, and we view such matters with dismay. It is sound legal and factual argument, rather than vituperative sniping, that is compelling to the court. When an attorney, in briefing the court, foregoes the former to engage in the latter, the client is deprived of an opportunity to persuade the court of the merits of his or her position.

■ The lack of professionalism and civility demonstrated in appellant's opening brief does not comport with the precepts embodied in the preamble to the HRPC, and we are compelled to refer the supreme court record in this case, as we must pursuant to the Revised Code of Judicial Conduct Canon 3(D)(2) (1992),[3] to the Office of Disciplinary Counsel for its review and appropriate action.

■ The fact that appellant's brief flouts the requirements of HRAP Rule 28 is also grounds for dismissal. *See* HRAP 30 ("When the brief of an appellant is otherwise not in conformity with these rules, the appeal may be dismissed[.]"). However, this court has consistently adhered to the policy of affording litigants the opportunity to "have their cases heard on the merits, where possible." *O'Connor*, 77 Hawai'i at 386, 885 P.2d at 364 (citations omitted). Notwithstanding such policy, we are, as discussed below, unable to consider the merits of appellant's contention that sanctions were erroneously imposed in this case because appellant failed to include the transcript of the applicable hearing in the record on appeal.

### B. *The August 6, 1993 Sanction Order*

■ Appellant complains that the imposition of a sanction, in the form of assessing him $360 toward appellee's attorney's fees, was an abuse of discretion. However, as previously indicated, because the transcript of the August 6, 1993 hearing is not part of the record on appeal, there is no basis upon which to review the family court's findings.

■ "The burden is upon appellant in an appeal to show error by reference to matters in the record, and he [or she] has the responsibility of providing an adequate transcript." *Union Building Materials Corp. v. The Kakaako Corp.*, 5 Haw.App. 146, 151, 682 P.2d 82, 87 (1984) (citing *State v. Goers*, 61 Haw. 198, 600 P.2d 1142 (1979); 9 Moore's Federal Practice ¶ 210.05[1] (2d ed. 1983)). "The law is clear in this jurisdiction that the appellant has the burden of furnishing the appellate court with a sufficient record to positively show the alleged error." *Id.* (citing *State v. Hawaiian Dredging Co.*, 48 Haw. 152, 397 P.2d 593 (1964); *Marn v. Reynolds*, 44 Haw. 655, 361 P.2d 383 (1961); *Johnson v. Robert's Hawaii Tour, Inc.*, 4 Haw.App. 175, 664 P.2d 262 (1983); *Hawaiian Trust Co. v. Cowan*, 4 Haw.App. 166, 663 P.2d 634 (1983)); *see also Lepere v. United Public Workers 646*, 77 Hawai'i 471, 887 P.2d 1029 (1995) (appellant has duty to include relevant transcripts of proceedings as part of record on appeal); *Loui v. Board of Medical Examiners*, 78 Hawai'i 21, 29 n. 17, 889 P.2d 705, 713 n. 17 (1995) (party has duty to provide appellate court with transcripts).

**3.** Canon 3(D)(2) of the Revised Code of Judicial Conduct provides:

A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Hawai'i Rules of Professional Conduct should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the Hawai'i Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate authority.

As this court stated in *City & County of Honolulu v. Kailua Auto Wreckers, Inc.*, 66 Haw. 532, 668 P.2d 34 (1983), "[i]t is counsel's responsibility to review the record once it is docketed and if anything material to counsel's client's case is omitted or misstated, to take steps to have the record corrected pursuant to [Hawai'i Rules of Civil Procedure ( ]HRCP[ ) ] Rule 75(d)[.]"[4] *Id.* at 533, 668 P.2d at 35. The record reflects that appellant's counsel was inexcusably cavalier with regard to his duty to review the record on appeal. In his affidavit supporting appellant's *ex parte* motion for extension of time to file appellant's jurisdictional statement, Oki explains that he was unaware of the requirements of HRAP Rule 12.1 and did not see a copy of the rule included with the record on appeal because:

> This manila packet/envelope was received by your affiant either on August 2 or 3, 1994, however, Affiant, based on his experience with another appeal he handled last year had presumed that enclosed therein was this appeal record and opted to deposit same in [appellant's] appeal file *without first opening the envelope to examine its contents;*
>
> . . . .
>
> [After] confirming with the Supreme Court's clerk's office that the opening brief will be due on or before September 10, 1994, I had perceived *no urgency to open the envelope and examine its contents* at that time.

(Emphases added.)

Without the transcript of the August 6, 1993 hearing, we have no basis upon which to review the family court's imposition of sanctions, which we therefore leave undisturbed. *See Lepere*, 77 Hawai'i at 473, 887 P.2d at 1031; *Union Building Materials Corp.*, 5 Haw.App. at 152, 682 P.2d at 88; *Tradewinds Hotel, Inc. v. Cochran*, 8 Haw.App. 256, 266, 799 P.2d 60, 66 (1990) (court is unable to review asserted errors where appellant has failed to provide transcript of proceedings below).

### C. The May 23, 1994 Order

Appellant also contends that the family court erred in denying his motion for reconsideration of the sanction order. Motions for rehearing or reconsideration under Hawai'i Family Court Rules (HFCR) Rules 59(a) and (b) involve the exercise of wide discretion, which will not be reversed on appeal absent abuse thereof. *Lusch v. Foster*, 3 Haw.App. 175, 184, 646 P.2d 969, 975 (1982); *see also Kaneohe Bay Cruises, Inc. v. Hirata*, 75 Haw. 250, 251, 861 P.2d 1, 3 (1993) (motion for reconsideration reviewed under the abuse of discretion standard). "The circuit court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *Kaneohe Bay Cruises*, 75 Haw. at 251, 861 P.2d at 3.

To the extent that appellant's arguments are intelligible, he asserts that the family court abused its discretion by ruling that the sanction order was enforceable, thereby effectively denying his August 26, 1993 motion for reconsideration. His arguments are without merit.

Appellant contends first that only the judge who issued the original order could hear the motion for reconsideration. Again, however, he fails to cite the court to any rule or other authority that would preclude a different judge from hearing the motion. For example, appellant could have cited *Wong v. City & County of Honolulu*, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983), for the proposition that, "[u]nless *cogent reasons* support the second court's action, any modification of a prior ruling of another court of equal and concurrent jurisdiction will be deemed an abuse of discretion." (Emphasis in original and citations omitted.). Whether the judge who issued the original order is the only one who can hear a motion for reconsideration thereof is of no consequence here because it was not, strictly speaking, appellant's motion that was the subject of the May 23 hearing. Technically, the hearing was to

---

4. HRCP Rule 75(d) has since been superseded by the virtually identical HRAP Rule 10(e). HRAP Rule 10(e)(2) permits "corrections and modifications" of the record where "anything material to any party is omitted from the record by error or accident or is misstated therein."

consider appellee's February 7, 1994 motion to show cause why appellant's motion for reconsideration should not be heard or dismissed.[5]

 Appellant next contends that he did not have notice of the May 23 hearing. The transcript of the hearing discloses that appellee's counsel informed the court that

> [the hearing] [o]n May 9th at 1:30 was continued and—to last week. And then Mr.—at 1:30 p.m. and then Mr. Oki could not make the hearing last week 'cause he was ill. So, he asked me to continue it to this Monday which I did.
>
> . . . .
>
> I also prepared a letter—I sent him a copy of the order for last week and I also was gonna fax him a written confirmation today this morning but his fax machine wouldn't come on but in any event I did leave a message on his machine.

Elsewhere in the record, appellant's counsel acknowledges that he knew there was a hearing involving this case on the afternoon of May 23, 1994. In an affidavit, he avowed that:

> Before leaving court late that morning [on May 23, 1994], after 11:00 a.m., I checked with the bailiff there as to whether there were any hearing[s] scheduled for that afternoon for the Bettencourt case *and was informed that there were reflection [sic] of such* on the list that she reviewed at her station, adding that I ought to obtain said hearing date from opposing counsel.

(Emphasis added.)

This court is not in a position to resolve conflicting factual assertions. The family court was informed by appellee's counsel, an officer of the court, that Oki had been notified of the rescheduled hearing. It was not an abuse of discretion, therefore, to find appellant in default and uphold the earlier order imposing sanctions. If Oki believes that misrepresentations were made to the court, he can file a complaint with the Office of Disciplinary Counsel regarding opposing counsel's actions in this case. In doing so, however, we believe Oki should be called upon to explain why, after requesting that the hearing be rescheduled, he failed to follow up and make inquiries of opposing counsel or court personnel regarding the new hearing date, especially after being informed by the court bailiff that the Bettencourt case appeared to be scheduled for hearing that afternoon. Oki's duty to his client, at the very least, required him to make reasonable follow up inquiries, and his attempt to shift this responsibility to opposing counsel is not well taken.

## III. *CONCLUSION*

Based on the foregoing, we: (1) dismiss that portion of the appeal regarding the August 6, 1993 award of attorney's fees in favor of appellee against appellant because we have no basis upon which to review it; (2) affirm the family court's order of May 23, 1994; and (3) refer the supreme court record of this case to the Office of Disciplinary Counsel for appropriate action.

---

5. We note that the procedure employed by the court with respect to the August 26, 1993 motion to reconsider was unauthorized by the rules of the family court, however, and complicated what should have been a relatively straightforward issue. Rather than continue the motion until "moved on by either party via motion," the court should properly have heard and decided the motion, continued it to a date certain, or dismissed it with or without prejudice. Because the court required a second motion on the same matter, while the original motion was still "viable," and because the court's ultimate ruling does not refer to either motion, but merely recites that the sanction order "currently stands and is enforceable," it appears that appellant's motion for reconsideration was not considered, let alone denied.