304 P.3d 1182

**Emily THOMAS–YUKIMURA,**
**Respondent/Plaintiff–**
**Appellee,**

v.

**David YUKIMURA, Petitioner/Defendant–**
**Appellant.**

**No. SCWC–29927.**

Supreme Court of Hawai'i.

June 27, 2013.

David Yukimura, petitioner pro se.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, McKENNA, and POLLACK, JJ.

Opinion of the Court by ACOBA, J.

We hold that the Family Court of the Fifth Circuit (the court)[1] was foreclosed from modifying the Decree Granting Divorce and Child Custody as to the apportioned liability for capital gains taxes between Petitioner/Defendant–Appellant David Yukimura (Petitioner) and Respondent/Plaintiff–Appellee Emily Thomas–Yukimura (Respondent), because the circumstances herein did not permit such modification under Hawaiʻi Family Court Rules (HFCR) Rule 52(b), Rule 59, or Rule 60.[23]

The Intermediate Court of Appeals (ICA)[4] affirmed the court's order modifying the decree. In light of the court's aforesaid error, we vacate its June 4, 2009 "Order on [Respondent's] and [Petitioner's] Motions for Post–Decree Relief" (Order on Post–Decree Relief) and the February 12, 2013 judgment of the ICA affirming the said Order on Post–Decree Relief. We remand the case to the court with instructions to reinstate the September 26, 2008 Decree Granting Divorce and Awarding Child Custody (Decree).

1. The Honorable Calvin K. Murashige presided.

2. The texts of these Rules are set forth *infra*.

3. In his Application for Writ of Certiorari Petitioner seeks review of the February 12, 2013 judgment of the ICA filed pursuant to its January 22, 2013 Summary Disposition Order (SDO), affirming the "Order on Plaintiff's and Defendant's Motions for Post–Decree Relief" entered by the court on June 4, 2009.

I.

A.

This case involves divorce proceedings between Petitioner and Respondent.[5] At issue during the proceedings was the disposition of property located at "Parcel 55, off Papalina Road, Kalaheo, Kauai." (Kalaheo Property) In Petitioner's closing argument, submitted by memorandum, he stated that the parties had come to an agreement regarding the Kalaheo Property:

> The parties agree that the Kalaheo Property [ ] will be sold. The agreed upon appraised value of the Property at the Date of Marriage is $135,000. <u>As further agreed in Judge's Chambers on April 15, 2008, Plaintiff is entitled to one-half the appreciation of the property after factoring in the sales price of the Property</u> minus the balance of the loan on the Property, <u>minus the capital gains tax</u>, minus the costs of sale (including escrow fees, realtor commissions, taxes) minus the net value of the property at the Date of Marriage ($135,000 minus loan balance at time of marriage).

> Defendant avers that he should also be credited for one-half of the debt and one-half of the taxes paid on the Property from the Date of Separation ... until the date the Property is actually sold.

(Emphases added).

Respondent's closing argument did not contest Petitioner's characterization of the parties' agreement regarding the Kalaheo Property. Instead, Respondent stated that "all issues for the divorce have been agreed to" except for (1) travel time, (2) Christmas vacation, (3) child care expenses, (4) custody over one of the children's bank account, (5) tax liability for the parties for 2006 and prior,

4. The ICA's SDO was filed by Presiding Judge Daniel R. Foley, and Associate Judges Alexa D.M. Fujise and Lawrence M. Reifurth.

5. Petitioner and Respondent were married for five years. Their marriage began in July, 2002. They were separated on April 24, 2007.

(6) division of personal property, and (7) division of certificates and debts.

In Respondent's proposed divorce decree, Respondent included terms for the division of the Kalaheo Property that were ultimately adopted in the final divorce decree.[6] Respondent's attorney prepared the Decree. Those terms were substantially similar to the understanding expressed in Petitioner's closing argument.

The court entered the Decree on September 26, 2008. In relevant part, the Decree provided that the Kalaheo Property would be sold, and the proceeds divided as proposed by the parties:

9. Real Property: The [Kalaheo Property] . . . was acquired by [Petitioner] prior to the parties' marriage, and is thus [Petitioner's] separate property.

The parties agree to sell the Kalaheo Property for $235,000.00.

The sale proceeds of the Kalaheo Property shall be divided as follows:

a. Pay off the loan at Kauai Community Federal Credit Union [ ] and/or an real property tax debt for the Kalaheo Property as of the date of separation ($18,482.87);

b. Pay all fees, costs, and capital gains tax from the sales transaction at Kalaheo Property, including realtor commissions, if any;

c. Pay [Petitioner] $96,755.89 ($135,000, the appraised value of the Kalaheo Property at the time of the marriage, July 2002 minus $38,244.11, the amount of the debt on the property at the time of marriage).

d. Pay [Petitioner] one-half of the costs of the Appraisal of the Kalaheo Property performed by Jose Diogo on August 27, 2007, and paid for in full by [Petitioner].

e. Balance to be divided equally between the parties.

(First emphasis in original.) (Remaining emphases added.)

### B.

Both parties filed post-decree motions. On December 8, 2008, Respondent filed a Motion for Post Decree Relief. In her motion, Respondent asked the court "for an Order enforcing the Decree." The Motion was filed "pursuant to Rules 4, 7, and 70 of the Hawai'i Family Court Rules [and] HRS § 580–56." In a declaration attached to the Motion, Respondent's counsel averred that Petitioner had failed to pay Respondent as required by the Decree. In relevant part, Respondent claimed that "[b]ased upon the calculations set forth in the subsections of provision 9 in the Decree, and the $230,000.00 sale price of the Kalaheo lot, [Petitioner] owes [Respondent] $57,146.62." Respondent's counsel also maintained that Petitioner had not complied with the terms of the Decree regarding the disposition of personal property. On December 16, 2008, Respondent also filed a Motion for Modification of Child Support.

On January 23, 2009, Petitioner filed a Motion for Relief From Decree Granting Divorce and Awarding Child Custody. This motion was filed "pursuant to Rules 7[7] and

---

6. The capital gains tax was mentioned in the record for the first time in Respondent's Exhibit entitled "[Respondent's] Proposed Divorce Decree," filed on May 2, 2008. The proposed divorce decree stated that before dividing the proceeds of the sale, the proceeds would be used, inter alia, "pay all fees, costs, and capital gains tax from the sales transaction of the Kalaheo Property." (Emphasis added.)

Identical language was also included in Petitioner's Exhibit entitled "[Petitioner's] Proposed Divorce Decree," also filed on May 2, 2008.

Identical language was again included in a Proposed Divorce Decree attached as an exhibit to Respondent's final argument on May 19, 2008. The terms regarding the Kalaheo Property set forth in this final Proposed Decree were identical

to those ultimately adopted by the court, except for the deletion of the phrase "minus ½ of the debt [on the Kauai Community Federal Credit Union loan for the property] paid between the date of separation and the date of sale."

7. HFCR Rule 7 provides in relevant part as follows:

**(b) Motions and Other Papers.**
(1) An application to the court for an order shall be by motion, . . . shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought.
(5) Any motion seeking an order for or modification of financial or monetary relief of any kind, . . . shall have attached, typewritten . . .

60 [8] of the [HFCR]." In the attached memorandum, Petitioner contended that Petitioner and Respondent had agreed to use specific language in paragraphs nine and ten of the Decree. However, Respondent had modified or omitted relevant language in the final Decree submitted to the court. Regarding paragraph nine, Petitioner maintained that Respondent had omitted from section D the language " 'pay [Petitioner] the principal paid by him on the loan from the date of separation to the date of sale.' "

On January 26, 2009, Petitioner filed a Motion in Opposition to Respondent's Motion for Post–Decree Relief. Petitioner argued, *inter alia,* that if the request in his Motion for Relief from Decree for modification of the Decree was granted, then the amount he owed Respondent pursuant to paragraph nine of the Decree should be reduced. He also argued that, pursuant to paragraph nine, he had subtracted the amount paid in capital gains tax from the amount he ultimately paid Petitioner.

A hearing on the above motions was apparently held on January 29, 2009. The record does not contain a transcript of the hearing.

On May 14, 2009, the court denied Petitioner's Motion for Relief From Decree Granting Divorce and Awarding Child Custody. The court did not issue findings of fact and conclusions of law or otherwise explain its denial of the motion.

On May 20, 2009, Petitioner's counsel withdrew as counsel of record. Proceeding pro se, Petitioner filed a motion requesting the court to reconsider its order denying Petitioner's Motion for Relief From Decree Granting Divorce and Awarding Child Custody.

On June 4, 2009, the court issued its Order on Post Decree Relief. In relevant part, the said Order resulted in Respondent paying less than half of the capital gains taxes on the income from the sale of the Kalaheo Property. Paragraph three stated:

> income and expense and asset and debt statements on the forms provided by the court or equivalent forms, executed by the movant and duly notarized or executed under penalty of perjury. . . .

3. Plaintiff's share of the equity in the Kalaheo Property shall be adjusted to reflect that her share of the capital gains tax paid as a result of the sale of the property shall be based on the appreciation in the value of the property from date of marriage of the parties to the date of sale of the property and not from the initial date of purchase of the property.

(Emphasis added.)

On July 20, 2009 the court issued the following relevant Findings of Fact (findings) relating to its Order on Post–Decree Relief:

3. Pursuant to the Decree Granting Divorce and Awarding Child Custody filed herein on September 26, 2008, the Kalaheo Property was order sold and the proceeds divided equally between the parties, with [Petitioner] being credited in the amount of $96,755.89, which amount reflected the net value of the Kalaheo Property at the date of marriage

4. The Kalaheo Property was subsequently sold;

5. As the owner of the Kalaheo Property, [Petitioner] is required to pay a capital gains tax based upon the appreciation of said property from date of purchase to date of sale;

6. [Respondent] and [Petitioner] were to share equally in the appreciation of the Kalaheo Property from the date of marriage to the date of sale, after the costs of sale, payment of the existing mortgage on the property and capital gains tax from the sale were paid;

7. Because [Petitioner] is entitled to a credit for the net value of the Kalaheo Property at the date of marriage and because the property had appreciated in value from the date of purchase to the date of marriage, it would not be equitable to require that [Respondent] share equally in the capital gains tax which taxed the appreciation of the property from the date of purchase (and not the date of marriage) to the date of the sale of said property;

---

8. See *infra* for relevant text of HRCF Rule 60.

8. The Decree Granting Divorce and Awarding Child Custody did not specifically detail how much of the capital gains tax incurred by the sale of the Kalaheo Property each party should bear.

. . .

(Emphases added). The court also issued the following Conclusions of Law (conclusions):

1. Where an order or decree is ambiguous, it is within the court's discretion to clarify the ambiguity;

2. That portion of the Decree Granting Divorce and Awarding Child Custody filed herein on September 26, 2008 which addressed the division of the proceeds of the sale of the Kalaheo Property was ambiguous as to each party's share of the capital gains tax incurred on said property;

3. Based upon the fact that [Petitioner] was to receive credit for the net value of the Kalaheo Property on the date of marriage, then it would be only equitable that [Petitioner] alone be responsible for the tax on any capital gains incurred on said property from the date of purchase to the date of marriage and that both parties be responsible for the tax on any capital gains incurred on said property from the date of marriage to the date of sale.

(Emphases added.) The court then issued an "Order" which repeated verbatim paragraph three of its June 4, 2009 Order.

II.

A.

Petitioner, continuing pro se, appealed to the ICA. Petitioner argued, *inter alia*, (1) that contrary to conclusion 2, the Divorce Decree was not ambiguous, (2) Respondent did not file a written motion to modify the divorce decree, but instead "brought the issue of Plaintiff's 'pro rata' share of the capital gains tax in a hearing for another matter on January 29, 2009," and (3) because the issue was raised for the first time at the hearing, Petitioner was unable to prepare and therefore was denied due process. Respondent did not file an answering brief.[9]

B.

The ICA declined to address Petitioner's substantive arguments. Instead, the ICA noted that the transcript of the January 29, 2009 hearing was not made a part of the record, and without the transcript, the court was "unable to consider the merits of [Petitioner's] contention[s]." *Thomas–Yukimura v. Yukimura*, No. 29927, 129 Hawai'i 29, 2013 WL 238833 at *1. Therefore, the ICA "le[ft] undisturbed the [c]ourt's decision and order."[10] *Id.*

III.

The relevant question presented in Petitioner's Application is whether the ICA gravely erred in affirming the court's order modifying the divorce decree.[11]

---

9. Respondent's failure to file an Answering Brief did not require the ICA to decide in favor of Petitioner. *See Omerod v. Heirs of Kaheananui*, 116 Hawai'i 239, 268, 172 P.3d 983, 1012 (2007) ("Reversal is not automatically mandated by the appellee's failure to respond [in the Answering Brief] to an alleged error argued by the appellant."); *see also Costa v. Sunn*, 5 Haw.App. 419, 430, 697 P.2d 43, 51 (1985) ("[A]ppellee's failure to file an answering brief does not entitle appellant to the relief sought from the appellate court, even though the court may accept appellant's statement of facts as correct."). However, this court has said that "when an appellee fails to respond, an appellant is required only to make a prima face showing of error to obtain the relief sought." *Omerod*, 116 Hawai'i at 269, 172 P.3d at 1013.

10. Petitioner filed a motion for reconsideration before the ICA on February 1, 2013. Petitioner argued that, (1) the documents provided to the ICA were sufficient to demonstrate "that the court procedurally erred in modifying the Decree to adjust [Respondent's] share of capital gains tax, (2) Petitioner should be allowed to supplement the record, and (3) Petitioner was unable to file the hearing transcript because the courts on Kaua'i only provide video transcripts, and Petitioner had to contact someone on Maui to obtain a written transcript, which created an "unfair time disadvantage" in submitting the appeal by the deadline. On February 11, 2013, the ICA denied Petitioner's motion for reconsideration.

11. Petitioner also contended that the ICA gravely erred in denying his motion for reconsideration, whereas Petitioner had previously obtained a DVD transcript of the relevant hearing, and the ICA would not allow Petitioner to supplement the Record on Appeal with a written transcript.

In his Application, Petitioner reiterates the arguments raised in his Opening Brief and Motion for Reconsideration. Construing Petitioner's arguments liberally, *see Dupree v. Hiraga*, 121 Hawai'i 297, 315, 219 P.3d 1084, 1102 (2009) ("Pleadings prepared by pro se litigants should be interpreted liberally"), Petitioner contends in his Application (1) that the court did not have the power to amend the final judgment in these circumstances, (2) he was denied due process because he did not have an opportunity to respond to the arguments raised by Respondent at the hearing, and (3) he should be allowed to supplement the record to provide the court with the written transcript of the hearing, if necessary.

## IV.

As to Petitioner's first question, this court in *Wong v. Wong*, 79 Hawai'i 26, 897 P.2d 953 (1995), addressed the power of the trial courts to review their own judgments. 79 Hawai'i at 29, 897 P.2d at 956. It was explained that "[i]n the absence of rules or terms of court, a court may act to alter its own judgment within 'proper limitations of time.'" *Id.* However, this court noted that the circuit courts "are now governed by the Hawai'i Rules of Civil Procedure [ (HRCP) ]," which "set forth the circumstances under and the times within which the circuit courts may take actions to review and set aside their own judgments." This court specifically cited HRCP Rules 50, 52(b), 59, and 60 as governing the review of final judgments.

■ In the instant case, the family court is governed by the HFCR. Analogous to the HRCP in *Wong*, HFCR Rules 52(b), 59, and 60 govern the circumstances under which the family courts may "take actions to review and set aside their own judgments." 79 Hawai'i at 29, 897 P.2d at 956. *Wong* also cited HRCP Rule 50; however, there is no analogous Rule 50 in the HFCR. Therefore, the court in this case could not review its final judgment unless its actions conformed with HFCR Rules 52(b),[12] 59,[13] or 60.[14]

**12.** HFCR Rule 52(b) provides as follows:
Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made by the court, the question of sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the family court an objection to such findings or has made a motion to amend them or a motion for judgment.
(Emphasis added.)

**13.** HFCR Rule 59 provides in relevant part as follows:
(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues for good cause shown. On a motion for a new trial, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law, or make new findings and conclusions, and direct the entry of a new judgment.
(b) Time for motion. A motion for a new trial shall be filed not later than 10 days after the entry of the judgment unless otherwise provided by statute.
. . .
(d) On initiative of court. Not later than 10 days after entry of judgment the court of its own initiative may order a new trial, for any reason for which it might have granted a new trial on motion of a party. After giving the parties notice and an opportunity to be heard on the matter, the court may grant a motion for a new trial, timely served, for a reason not stated in the motion. In either case, the court shall specify in the order the grounds therefor.
(e) Motion to reconsider, alter or amend a judgment or order. Except as otherwise provided by HRS section 571–54 regarding motions for reconsideration in proceedings based upon HRS sections 571–11(1), (2), or (6), a motion to reconsider, alter or amend a judgment or order is not required but may be filed no later than 10 days after entry of the judgment or order and shall be a non-hearing motion, except that the court in its discretion may set any matter for hearing. Responsive pleadings to a motion for reconsideration shall be filed no later than 10 days after filing of the motion to reconsider, alter or amend the judgment or order.
(Emphases added.)

**14.** HRCP Rule 60 provides in relevant part as follows:

(a) Clerical mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed, and thereafter while

## A.

As Petitioner argues, under HFCR Rule 59(e), a motion to reconsider, alter, or amend a judgment or order must be filed "no later than 10 days after entry of the judgment or order." HFCR Rule 59(e).[15] HFCR Rule 6(d) further provides that the court "may not extend the time for taking any action under ... Rules 59(b), (d), and (e)." Additionally, it appears that a court may not act *sua sponte* to extend the 10 day time limit. *Cf. Wong*, 79 Hawai'i at 31, 897 P.2d at 958 ("Nor could the circuit court sua sponte vacate its final judgment to allow untimely service of an HRCP 59 motion, for doing so would allow precisely what is prohibited by HRCP 6(b)."); *Escritor v. Maui County Council, Ltd.*, 2 Haw.App. 200, 202, 629 P.2d 1146, 1148 (1981) ("Rule 6(a) expressly provides that the circuit court has no power to extend the time for taking any action under Rule 59(e).").

In the instant case, the court entered its Decree on September 26, 2008. No further motions regarding the Decree were filed until December 8, 2008, when Respondent filed her Motion for Post–Decree relief. Thus, it is evident that no actions were taken to modify the Decree until well after the 10 day time limit provided by HFCR Rule 59(e) had passed. Hence, the court could not act to modify its judgment under Rule 59(e).

For the same reasons, the court could not act to amend its judgment under HFCR Rule 52(b). Rule 52(b) also requires the party to file a motion within 10 days, and HFCR Rule 6(d) also precludes the court from extending the time to file a Rule 52(b) motion. Therefore, HFCR Rule 52(b) was also inapplicable.

## B.

### 1.

However, as explained by *Wong*, Rule 60 also grants the court power to modify a final judgment. To reiterate, HFCR Rule 60(a) provides that "[c]lerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time o[n] its own initiative or on the motion of any party and after such notice, if any, as the court orders." (Emphasis added.) In the instant case, the court may have relied on Rule 60(a) to amend the judgment. Conclusion one stated that "where an order of the court is ambiguous, it is within the court's discretion to correct the ambiguity." In other words, the court's conclusion suggested that the court was simply "correcting" a mistake in the original judgment.

However, Rule 60(a) was not available to the court in the instant case. Relief is not appropriate under Rule 60(a) "when the change is substantive in nature." Wright and Miller, *Federal Practice and Procedure* § 2854.[16] "[A] motion under Rule 60(a) ...

---

the appeal is pending may be so corrected with leave of the appellate court.

(b) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud. <u>On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons:</u>

<u>(1) mistake, inadvertence, surprise, or excusable neglect;</u> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6)

<u>any other reason justifying relief from the operation of the judgment.</u> The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceedings was entered or taken.... (Emphases added.)

15. HFCR Rule 59(e) provides an exception for cases governed by HRS § 571–11(1), (2), or (6). None of the relevant subsections of HRS § 571–11 are at issue in this case. HRS § 571–11(1) addresses alleged crimes committed by persons under 18 years of age. HRS § 571–11(2) addresses children who are neglected, fail to attend school, or violate curfew. HRS § 571–11(6) addresses judicial consent to the "marriage, employment, or enlistment of a child." In contrast, the instant case involves a divorce decree.

16. Rule 60 of the Federal Rules of Civil Procedure (FRCP) is essentially identical to HFCR

cannot be used to make [the judgment or order] say something other than what was originally pronounced." *Id.* (emphasis added); *see also Davis v. Wholesale Motors,* 86 Hawai'i 405, 416, 949 P.2d 1026, 1037 (App. 1997) (allowing modification of a judgment under HRCP Rule 60 because "the amended judgment did not make any substantive changes to the original judgment."). Consequently, "Rule 60(a) is not a vehicle for relitigating matters that already have been litigated and decided, nor to change what has been deliberately done." *Id.* (emphasis added); *see also Donnelly v. Donnelly,* 98 Hawai'i 280, 286, 47 P.3d 747, 753 (App.2002) ("HFCR Rule 60(a) applies 'to situations in which a judgment clearly misrepresents what the court meant to state.'") (quoting 2 James Wm. Moore, *Moore's Federal Practice* § 60.11[1][c] (3d ed.)).

In the instant case, the court's amendment of the final judgment was "substantive in nature." First, contrary to conclusion two, the original divorce decree was not "ambiguous as to each parties' share of the capital gains tax." Instead, the Decree provided that the parties would pay any capital gains tax equally. To reiterate, the Decree stated that the proceeds of the sale of the Kalaheo Property would be used to (1) pay a loan at Kauai Community, (2) pay all of the fees, costs, and capital gains tax from the sales transaction of the Kalaheo Property, (3) pay Petitioner the appraised value of the property at the time of marriage, and (4) pay one-half of the costs of the appraisal of the property. The balance of the proceeds was to be divided between the parties.

Balance is defined as, *inter alia,* the "remainder" or "an amount in excess, especially on the credit side of an account." Merriam Webster's Collegiate Dictionary at 87 (10th ed. 1993). By providing that the "remainder" of the proceeds would be divided by the parties, the Decree plainly indicated that the first four requirements were to be satisfied before the proceeds of the sale were divided.

This included, *inter alia,* paying all of the capital gains tax from selling the property. The original decree unambiguously provided that the proceeds of the sale would be used to pay the capital gains tax before the proceeds were divided by the parties. In other words, the parties would be equally responsible for paying the capital gains tax, because that tax would have to be paid before the proceeds were divided equally.

The court's Order on Post–Decree Relief, however, reduced Respondent's liability for the capital gains tax. That Order provided that Respondent's "share of the equity in the Kalaheo Property shall be adjusted to reflect that her share of the capital gains tax paid as a result of the sale of the property shall be based on the appreciation in the value of the property from the date of marriage. . . ." The appreciation value of the property from the date of marriage was less than the total proceeds of the sale. Therefore, requiring the capital gains tax to be based only on the appreciation of the property from the date of marriage meant that Respondent's share of the capital gains tax would be less than one-half of the total. The Order effectively absolved Respondent of the requirement in the Decree that she pay one-half of the capital gains tax. Hence, the effect of the Order was to make the judgment "say something other than was originally pronounced." Wright and Miller, *Federal Practice and Procedure* § 2854.

Second, the effect of the court's Order was to "change something that was deliberately done." *Id.* The record demonstrates that the parties agreed that the proceeds of the sale of the Kalaheo Property to pay all of the capital gains taxes arising from the sale before distributing the proceeds of the sale to the parties. Petitioner's closing statement asserted that "as agreed in Judge's Chambers," Respondent was to receive "one-half the appreciation of the property" but that appreciation was to be calculated by "factoring in the

Rule 60. Therefore, authorities interpreting the Federal Rules are "highly persuasive." *Kawamata Farms, Inc. v. United Agri Products,* 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997) ("Where we have patterned a rule of procedure after an equivalent rule within the FRCP, interpretations of the rule by the federal courts are deemed to be highly persuasive in the reasoning of this court.") (internal quotation marks omitted).

sales price of the property" minus, *inter alia,* "the capital gains tax."

This agreement was also reflected in the proposed decree drafted by Respondent, which stated that the proceeds of the sale of the Kalaheo Property would be used to pay all of the capital gains tax before the proceeds were divided by the parties. The reason that the Decree required that the parties pay the capital gains tax equally, therefore, was that this reflected the agreement of the parties on that issue. Hence, this requirement was "deliberate." It was inappropriate then to use HFCR Rule 60(a) to change this "deliberate" understanding. Wright and Miller, *Federal Practice and Procedure* § 2854. Consequently, the court's action amending the judgment cannot be justified by HFCR Rule 60(a).

2.

 Finally, the court's findings and conclusions demonstrate that the court's order cannot be justified by Rule 60(b). HFCR Rule 60(b) provides that:

> On motion [17] and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment

should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

(Emphasis added.) The court's conclusions stated that the judgment was "ambiguous" and that the court could "clarify the ambiguity." Ambiguity, however, is not one of the bases for granting a party relief from a final judgment under Rule 60(b). As discussed *supra,* it is plain that the "ambiguity" did not constitute a "mistake" because the parties agreed that they would pay the capital gains tax equally. Further, Rule 60(b)(6) allows the court to grant a Rule 60(b) motion for "any other reason justifying relief." HFCR Rule 60(b)(6). However, HFCR Rule 60(b)(6) "provides for extraordinary relief and is only invoked upon a showing of exceptional circumstances." *Isemoto Contracting Co. v. Andrade,* 1 Haw.App. 202, 205, 616 P.2d 1022, 1025 (1980). The court's findings and conclusions do not address "exceptional circumstances." Nothing in the court's findings or conclusions suggest that the requirements of Rule 60(b) have been met. Hence, the court's Order cannot be justified by Rule 60(b).

Moreover, reliance on Rule 60(b) is precluded by *Nakata v. Nakata,* 3 Haw.App. 51, 641 P.2d 333 (1982). In *Nakata,* during divorce proceedings, the parties prepared an "Agreement" which provided, *inter alia,* that the plaintiff would be granted possession of specific real property, but would be required to pay 25% of the equity in the property to the defendant within six months. *Id.* at 52, 641 P.2d at 334. If the plaintiff could not pay 25% within six months, the property was to be sold. *Id.* At the request of both parties, the family court incorporated the Agreement into the decree of divorce. *Id.* at 56, 641 P.2d at 336.

---

**17.** Although the plain language of Rule 60(b) would appear to require a motion by the parties to allow the court to act, the majority of courts apparently allow the court to reconsider decisions under Rule 60(b) *sua sponte. See, e.g., Kingvision Pay–Per View Ltd. v. Lake Alice Bar,* 168 F.3d 347, 352 (9th Cir.1999) (Noting that "[t]he traditional definition of *sua sponte* is that the court acts of 'its own will or motion,' and therefore "the words "on motion" in Rule 60(b) do not plainly exclude *sua sponte* repairs of mis-

takes or inadvertence") (quoting *Blacks Law Dictionary* 1424 (6th ed. 1990) (emphasis in original)); *Fort Knox Music Inc. v. Baptiste,* 257 F.3d 108 (2d Cir.2001); *cf.* Wright and Miller, *Federal Practice and Procedure* § 2865. *But see, e.g., Eaton v. Jamrog,* 984 F.2d 760, 762 (6th Cir. 1993) (holding that court did not have authority to vacate judgment under Rule 60(b) because, *inter alia,* "Rule 60(b) explicitly requires a motion from the affected party, and in this case the district court acted *sua sponte.*").

In the six months following the entry of the decree of divorce, the plaintiff failed to pay 25% of the value of the property. *Id.* at 53, 641 P.2d at 335. The defendant filed an order to show cause requesting that the property be sold. *Id.* The court allowed the plaintiff an additional three months to exercise her right to purchase. *Id.* This was done because "the parties both anticipated and recognized in the Agreement" that the plaintiff's ability to pay defendant 25% of the equity in the property was contingent upon the sale of property on Molokai, and that the failure to sell the property on Molokai was not within the plaintiff's control. *Id.* at 54, 641 P.2d at 335.

The defendant appealed, arguing that the family court "amended the clear, unambiguous, and enforceable language of its [decree of divorce]." *Id.* at 54–55, 641 P.2d at 335. The plaintiff responded that the court "did not modify the decree," but "merely clarified ambiguities." *Id.* at 54, 641 P.2d at 335. The ICA held that "[t]he authority for the [family] court's action comes, if at all, from [HFCR] Rule 60(b)." *Id.* at 55, 641 P.2d at 336. However, "the broad power granted by [HFCR] Rule 60(b) [ ] is not for the purpose of relieving a party from free, calculated, and deliberate choices he, she, or it has made." *Id.* at 56, 641 P.2d at 336 (citing Wright and Miller, *Federal Practice and Procedure* § 2864 (1st ed.1973)); *accord In Re RGB*, 123 Hawai'i 1, 20, 229 P.3d 1066, 1085 (2010). Because the Agreement was incorporated into the decree at the request of both parties, the ICA held that the use of HFCR Rule 60(b) "was excessive." *Nakata*, 3 Haw.App. at 56, 641 P.2d at 336.

Similarly, as discussed *supra*, the Decree's equal apportionment of the capital gains tax was the result of the agreement of the parties. Inasmuch as Rule 60(b) cannot be used for the "purpose of relieving a party from [a] free, calculated, and deliberate choice[ ] he, she, or it has made," *id.*, the court could not have amended the Decree under Rule 60(b).

## C.

Petitioner argues that Respondent's failure to file an HFCR 59(e) motion within 10 days rendered the court powerless to amend the Decree to reduce the amount of capital gains tax paid by Respondent. To amend the decree, the court must have acted under one of HFCR Rule 52(b), HFCR Rule 59, or HFCR Rule 60. *Wong*, 79 Hawai'i at 29, 897 P.2d at 956. Based on the foregoing, the court's Order amending the Decree did not meet the requirements of any of these Rules. Hence, the court lacked the power to amend the Decree. The court's Order must therefore be vacated.[18]

## VII.

■ Based on the foregoing, we vacate the ICA's February 12, 2013 judgment and the court's June 4, 2009 Order on Post–Decree Relief, and remand [19] this case to the court for disposition consistent with the opinion herein.

---

18. As noted, Petitioner also argued in the second question of his Application that he was deprived of due process because the court amended the Decree without allowing him to respond. However, as discussed *supra*, the court did not have the authority to amend the decree at all under the HFCR. Therefore, it is unnecessary to address this argument.

19. As noted, Petitioner maintained in the third question of his Application that if it was necessary to demonstrate that the court erred, he should have been allowed to supplement the record with the hearing transcript. However, as shown *supra*, it is possible to determine that the court erred without recourse to the transcript. "The law is clear in this jurisdiction that the appellant has the burden of furnishing the appel- late court with a sufficient record to positively show the alleged error." *Bettencourt v. Bettencourt*, 80 Hawai'i 225, 230–31, 909 P.2d 553, 558–59 (1995) (citation omitted). "When an appellant desires to raise any point on appeal that requires consideration of the oral proceedings before the court," the appellant also must request transcripts of those proceedings. HRAP Rule 10(a)(b)(1)(A); *Bettencourt*, 80 Hawai'i at 230–31, 909 P.2d at 558–59. However, in the instant case, the record clearly discloses that the court did not have the authority under the HFCR to amend or modify the Decree, *Wong*, 79 Hawai'i at 29, 897 P.2d at 956, therefore, a transcript of the January 29, 2009 hearing was not necessary, *see* HRAP Rule 10(a)(b)(1)(A); *Bettencourt*, 80 Hawai'i at 230–31, 909 P.2d at 558–59.